24089

The STATE, Respondent v. Paul A. GRAHAM, Appellant.

(444 S.E. (2d) 525)

Supreme Court

*Gary D. Brown,* Ridgeland, *for appellant.*

*T. Travis Medlock, Atty. Gen., Donald J. Zelenka, Chief Deputy Atty. Gen., Harold M. Coombs, Jr., Sr. Asst. Atty. Gen., Rakale Buchanan Smith, Asst. Atty. Gen.,* Columbia,

and *Randolph Murdaugh, III, Sol., Fourteenth Judicial Circuit,* Hampton, *for respondent.*

Heard Oct. 5, 1993.

Decided June 6, 1994; Reh. Den. June 30, 1994.

TOAL, Justice:

Paul Graham ("Graham") appeals his conviction for murder. Graham asserts, among other claims, that his Sixth Amendment right to confront the witness was violated. We agree.

## FACTS

On the afternoon of January 25, 1992, Graham, "Tunch" Simmons, Steven Warren, Sr., and Jim Brabham ("Victim") drank beer at a local boat landing. In the late afternoon, all of the men left the boat landing and returned to a fireworks stand on Highway 17, operated by "Tunch" Simmons. Steve Warren, Jr. was working at the fireworks stand that afternoon. Earlier in the day, the victim left two shotguns at the fireworks stand in an effort to sell the guns. When the men came in from the boat landing, Steve Warren, Jr. gave his father, Steve Warren, Sr., one of the guns, a piece of cardboard, and a shell for the gun. The testimony is conflicting as to the events which followed.

Graham testified that Steve Warren, Sr. and the victim went into the parking lot of the fireworks stand where Steve Warren, Sr. shot the victim in the chest and then held a second gun on Graham and forced Graham to shoot the victim again. Steve Warren, Sr. testified that Graham shot the victim twice without any involvement of Steve Warren, Sr.

Late that evening, Graham, Steve Warren, Sr., and Steve Warren, Jr. loaded the victim's body into the bed of "Tunch" Simmons' pickup truck and dumped the victim's body in the river. The next day, "Tunch" Simmons' pickup truck was found burning in a wooded area near Highway 17 in Jasper County.

Graham and Steve Warren Sr. were tried and convicted of the murder of Jim Brabham. Steve Warren, Jr. agreed to testify for the State in exchange for the State's agreement not to prosecute him in connection with the death of Jim Brabham. "Tunch" Simmons pled guilty to accessory after the fact of murder and received an eight-year sentence.

## LAW/ANALYSIS

Graham claims that his Sixth Amendment right of confrontation was violated when he was prohibited from impeaching "Tunch" Simmons by bringing to the jury's attention Simmons' sentence of eight years for his involvement in the murder of Jim Brabham. We agree.

"The Sixth Amendment rights to notice, confrontation, and compulsory process guarantee that a criminal charge may be answered through the calling and interrogation of favorable witnesses, the cross-examination of adverse witnesses, and the orderly introduction of evidence." *State v. Schmidt*, 288 S.C. 301, 303, 342 S.E. (2d) 401, 402 (1986). Specifically included in a defendant's Sixth Amendment right to confront the witness is the right to meaningful cross-examination of adverse witnesses. *See State v. Brown*, 303 S.C. 169, 399 S.E. (2d) 593 (1991).

> [A] criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in *otherwise appropriate* cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby "to expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witness."

*Delaware v. Van Arsdall*, 475 U.S. 673, 680, 106 S. Ct. 1431, 1436, 89 L.Ed. (2d) 674, 684 (1986). [Emphasis added.]

The Confrontation Clause does not, however,

> prevent a trial judge from imposing any limits on defense counsel's inquiry into the potential bias of a prosecution witness. On the contrary, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, witness' safety, or interrogation that is repetitive or only marginally relevant.

*Id.* at 679, 106 S.Ct. at 1435, 89 L.Ed. (2d) at 683 (1986).

The trial judge retains discretion "to impose reasonable limits on [the scope] of cross-examination." *Id.* We caution the bench, however, that before a criminal defendant can be prohibited from engaging in cross-examination

designed to show "a prototypical form of bias on the part of the witness," *Id.* at 680, 106 S.Ct. at 1436, 89 L.Ed. (2d) at 684 (1986), the record must clearly show that the cross-examination is somehow inappropriate. The record at bar is completely devoid of any such showing. We hold that the trial judge abused his discretion by prohibiting Graham from questioning Tunch Simmons about the eight-year sentence he received for accessory after the fact of murder in the killing of Jim Brabham. Graham's Sixth Amendment right to confront the witness was violated.

A violation of the defendant's Sixth Amendment right to confront the witness is not *per se* reversible error.

*Id.* This Court must determine whether the "error was harmless beyond a reasonable doubt." *Id.* at 684, 106 S.Ct. at 1438, 89 L.Ed. (2d) at 686 (1986).

> Whether such an error is harmless in a particular case depends upon a host of factors. . . . The factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.

*Id.* The list of factors as set out in *Van Arsdall* is not exhaustive. The facts of the case at bar do not fall squarely within any of the *Van Arsdall* factors. Nevertheless, we do not believe the error was harmless.

The prosecution did not call "Tunch" Simmons to the witness stand. Rather, Simmons was called by Graham's co-defendant, Steve Warren, Sr. Simmons arrived in the courtroom with counsel. Counsel for Simmons announced to the court that Simmons intended to invoke his Fifth Amendment right not to incriminate himself. Simmons claimed that although he pled guilty to accessory to murder after the fact in the murder of Jim Brabham, there was still, pending against him, an indictment for murder in the case. Graham's counsel objected on the ground that Simmons' plea agreement freed Simmons from further prosecution in the death of Jim Brabham.

The solicitor claimed that the plea agreement with Simmons was valid only if the solicitor called Simmons as a wit-

ness and Simmons testified truthfully. The trial judge informed the solicitor that he could not prevent Simmons from testifying for the defense under threat of additional prosecution in the case. While the solicitor conceded he could not prevent Simmons from testifying, the solicitor continued to threaten further prosecution of Simmons unless Simmons testified "truthfully." "Truthfully" was defined by the solicitor as the facts Simmons previously told the solicitor that Simmons was drunk and had no knowledge of the events surrounding the shooting of Jim Brabham. Simmons, predictably, so testified.

Graham proffered the testimony of Gary Simmons.[1] Gary simmons testified that around 4 a.m. on January 26, 1992, "Tunch" Simmons blew his car horn in front of the residence of Gary Simmons. In an effort to quiet "Tunch" Simmons, Gary Simmons went out of his house to talk to "Tunch" Simmons. "Tunch" Simmons informed Gary Simmons that he would have no further problems with Jim Brabham. Further, Gary Simmons testified that "Tunch" Simmons admitted killing Jim Brabham.

The solicitor's attempted manipulation of "Tunch" Simmons' testimony and the proffered testimony of Gary Simmons raises in our minds the question of the extent of "Tunch" Simmons' involvement in the death of Jim Brabham. As the sole finders of fact, we believe the jury was entitled to know Simmons' sentence. Murder is a serious crime for which Graham, who was sixteen at the time of the murder, received a sentence of life in prison. By contrast, Simmons was able to avoid the heavy penalty in exchange for what may have been his silence. We believe Graham was prejudiced by not having "Tunch" Simmons' sentence presented to the jury. Thus, we reverse and remand for a new trial.

We need not address Graham's remaining issues. The judgment of the circuit court is REVERSED and the case is REMANDED for a new trial.

HARWELL, C.J., and CHANDLER, FINNEY and MOORE, JJ., concur.

---

[1] Gary Simmons testified he is not related to "Tunch" Simmons.