535 S.E.2d 134

**The STATE, Respondent,**

v.

**Jamie MIZZELL and Jimmy Allen (Tootie) Mizzell, Appellants.**

**No. 3205.**

Court of Appeals of South Carolina.

Heard April 11, 2000.

Decided June 26, 2000.

Rehearing Denied Sept. 16, 2000.

Assistant Appellate Defender Melissa J. Reed Kimbrough, of SC Office of Appellate Defense, of Columbia, for appellants.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Senior Assistant Attorney General Harold M. Coombs, Jr., all of Columbia; and Solicitor Randolph Murdaugh, III, of Hampton, for respondent.

MOREHEAD, Acting Judge:

Jamie Mizzell and Jimmy Allen "Tootie" Mizzell appeal their convictions for second degree burglary and grand larceny. They argue the trial court erred in excluding certain impeachment evidence against the State's primary witness. We affirm.

## FACTS

On September 24, 1996, Howard Woods arrived home to find his backdoor open. Woods concluded from the broken lock and dark scuff mark on the door that someone had opened the door by kicking it. Inside he discovered more than thirty of the firearms he collected were missing. Officers investigating the crime discovered Thomas Harley had nine of the stolen guns. These nine guns were conservatively valued at more than $2,000. Harley initially did not want to cooperate with authorities but eventually returned the guns to law enforcement.

Based on the police investigation, the Colleton County Grand Jury indicted the Mizzells on one count each of grand larceny, first degree burglary, and possession of a weapon during the commission of a crime. The State thereafter tried the Mizzells on one count each of grand larceny, second degree burglary, and possession of a weapon during the commission of a crime.

At trial, Harley testified that he purchased the guns for $700 from the Mizzells. The Mizzells arrived at his home in a truck and offered to sell him some guns. He picked seven guns from a selection of guns inside the truck. The Mizzells then "threw in two for free." He recalled seeing another man and a woman in the truck.

After police investigation revealed Donald Steele was the man Harley saw in the truck, the State charged Steele with the same crimes as the Mizzells but planned to try Steele for those crimes after the Mizzells' trial. Steele testified at the Mizzells' trial. Although Steele admitted participating in the burglary and larceny, he portrayed himself in the best possible light. He testified that he drove himself, his estranged wife, and the Mizzells to Woods's home in his truck.

According to Steele, after Tootie kicked the door open, the Mizzells went inside the home. When the Mizzells returned, they were carrying guns which they threw into the back of the truck. After the Mizzells got back into the truck, Steele drove away from the scene. The Mizzells instructed him to drive down a particular road to a house where the Mizzells sold some of the guns. Steele again drove down some more roads as instructed. Steele testified that when they neared the outskirts of Summerville, he stopped and told the Mizzells to take the guns out of his truck. The Mizzells hid the guns in a ditch on the side of the road. The Mizzells and Steele then purchased marijuana and crack cocaine, drove to a motel, and smoked the drugs.

During Steele's cross-examination, Jamie Mizzell's counsel attempted to ask Steele how much prison time he could receive for the crimes with which he was charged. After suggesting the State should object, the trial court held a hearing on the matter. The trial court ruled the precise potential sentences Steele faced were inadmissible, reasoning the Mizzells were attempting to improperly bring their own potential penal liability before the jury through "the back door." The State suggested the Mizzells could ask Steele whether he could go to jail for a long time if convicted. Jamie Mizzell's counsel agreed to conform the question as requested.

During the same hearing, the trial court also considered the Mizzells' request to admit evidence of Steele's seventeen-year-

old convictions for housebreaking and contributing to the delinquency of a minor. The Mizzells allegedly wanted to introduce this evidence in order to "let the jury know about the credibility and the believability of [Steele]." Additionally, in a prior discussion, the Mizzells suggested this evidence would show Steele engaged in a pattern of using or influencing people younger than himself to engage in criminal activity. The trial court ruled the evidence inadmissible, dismissing any potential probative value.

At the conclusion of the evidence, the trial court directed verdicts in favor of the Mizzells on the charges of possession of weapons during the commission of a crime. The trial court then submitted the remaining charges to the jury, and the jury returned guilty verdicts on all charges. The trial court sentenced Jamie Mizzell to fifteen years for second degree burglary and five concurrent years for grand larceny. The trial court sentenced Tootie Mizzell to fifteen years for second degree burglary, suspended upon service of five years and five years probation, and five concurrent years for grand larceny. In addition, the trial court ordered each of the Mizzells to pay restitution in the sum of $8,010, with joint and several liability. This appeal follows.

## DISCUSSION

### I. Rule 609, SCRE

The Mizzells argue the trial court erred in refusing to permit evidence of Steele's 1981 convictions for housebreaking and contributing to the delinquency of a minor. They first argue the trial court erred in failing to exercise its discretion under Rule 609, SCRE. They also maintain that if the trial court had exercised its discretion, the evidence would have been admissible. We find no reversible error.

 Rulings on the admissibility of evidence are within the trial court's discretion and will not be disturbed on appeal absent an abuse of that discretion. *Baber v. Greenville County*, 327 S.C. 31, 488 S.E.2d 314 (1997). Further, "[t]he scope of cross-examination is within the discretion of the trial judge, whose decision will not be reversed on appeal absent a showing of prejudice." *State v. Colf*, 337 S.C. 622, 625, 525 S.E.2d

246, 247–48 (2000), *aff'g as modified,* 332 S.C. 313, 504 S.E.2d 360 (Ct.App.1998).

 Rule 609(b), SCRE, governs the use of stale convictions to impeach witnesses. This subsection provides:

Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, *unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect.*

Rule 609(b), SCRE (emphasis added). According to this rule, a conviction more than ten years old is presumptively inadmissible. *Colf,* 337 S.C. at 626, 525 S.E.2d at 248. The trial court may allow the conviction into evidence only after deciding the probative value of the evidence substantially outweighs the prejudicial effect and "articulating for the record the specific facts and circumstances supporting its decision." *Id.* at 629, 525 S.E.2d at 249.

 Based on our reading of the rule, the trial court must make specific findings on the record only when *admitting* evidence of remote convictions. *See United States v. Cavender,* 578 F.2d 528, 532 (4th Cir.1978) ("We conclude that 609(b) requires the District Court, if it concludes to admit thereunder a conviction more than ten years old, to find that the probative value of such conviction 'substantially outweighs' its prejudicial impact and to support that finding with an identification of the 'specific facts and circumstances' which support its decision."); *Colf,* 337 S.C. at 626, 525 S.E.2d at 248 (appellate court held that since Rule 609(b), SCRE, is identical to Rule 609(b), FRE, federal cases may be persuasive).

 In this case, the trial court refused to admit Steele's remote convictions into evidence. The trial court, therefore, was not required to articulate on the record its weighing of the probative value and prejudicial effect. The record, however, does reflect the following discussion concerning the trial court's decision:

536

MR. BONDS [counsel for Tootie Mizzell]: Your Honor, this gentleman, Mr. Steele, has a prior record for house breaking.

Has a prior record for contributing to the delinquency of a minor. I believe that those are crimes that we should be able to enter in and cross examine him on.

THE COURT: That was 1981.

MR. BONDS: Yes, sir.

THE COURT: What does it have to do with this case? He said he did it [participated in the burglary and larceny involving Woods's home]. What does it have to do with this case?

MR. BONDS: I think it has a lot—same crime. It's the same situation, Your Honor. I mean, he's charged with the same crime.

THE COURT: That's what the statute is all about.

MR. BONDS: Yes, sir.

THE COURT: You can't impeach somebody. Rather you can't ask them about a crime of moral turpitude except by the statute. Now you say that I have the discretion to do it, to allow it, but what would it add or subtract from this case if he says, I did it?

MR. BONDS: Well, I think—

THE COURT: What's the purpose of using it?

MR. BONDS: To let the jury know about the credibility and the believability of this gentleman right here.

THE COURT: All right.

MR. BONDS: That's exactly what—

THE COURT: Yes, sir.

MR. BRYAN [counsel for Jamie Mizzell]: Your Honor, I join in Mr. Bonds [sic] motion. I would also point out that this witness here is evading responsibility on his own part. He's admitting being there and being in the truck, not knowing what the crime was about. He didn't—

THE COURT: He already said his attorney told him it was serious. And I assume the good lawyer that his lawyer is he told him to [sic] hand of one is the hand of the other whether he's inside or outside. So I'm not going to let that in. Anything further?

It is apparent from this discussion that, while the trial court did not expressly compare the probative value and prejudicial effect of the evidence before ruling it was inadmissible, the trial court did analyze these factors. Based on the trial court's analysis, it excluded the presumptively inadmissible evidence. We, therefore, find no abuse of the trial court's discretion.

■ Furthermore, we agree with the trial court that the probative value of the evidence did not warrant its admission. The Mizzells argue on appeal that the admission of this evidence was necessary to support their theory of the defense that:

they acted under the domination and influence of Donald Steele. Likewise, the fact that Mr. Steele had previously been convicted of a crime in which his co-defendants were substantially younger than he would have greatly bolstered the defense theory of the case. Without this evidence before the jury, the defense had absolutely nothing by way of proof to support its version of events.

Introduction of Steele's prior convictions potentially would have cast doubt upon his claim that he was unaware of the Mizzells' plan to break into Woods's home before arriving on the scene. This evidence, however, would not have diminished the State's assertion that the Mizzells participated as principals in the burglary. The evidence likely would have enhanced, rather than reduced, the possibility that the jury would have believed the Mizzells entered the home and took the guns. We conclude the trial court did not abuse its discretion in excluding the evidence under Rule 609(b), SCRE.

## II. Confrontation Clause

The Mizzells next argue the trial court violated their Confrontation Clause rights by preventing their cross-examination of Steele on his remote convictions and pending penal liability. We disagree.

■ The general rule that a trial court's ruling on the scope of cross-examination will not be disturbed absent an abuse of discretion is subject to the Sixth Amendment's guarantee of a defendant's right to meaningful cross-examination. *State v. Mitchell*, 330 S.C. 189, 498 S.E.2d 642 (1998).

 The Confrontation Clause guarantees an accused the right "to be confronted with the witnesses against him." U.S. Const. amend. VI. The right to cross-examine adverse witnesses is the primary purpose of the defendant's right to confrontation. *Delaware v. Van Arsdall,* 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). Trial courts, however, "retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness's safety, or interrogation that is repetitive or only marginally relevant." *Id.* at 679, 106 S.Ct. 1431.

> [A] criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby "to expose to the jury the facts from which the jurors ... could appropriately draw inferences relating to the reliability of the witness."

*Id.* at 680, 106 S.Ct. 1431 (quoting *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974)).

### A. Remote Convictions

 We are not convinced by the Mizzells' argument that their Confrontation Clause rights were violated when they were prevented from questioning Steele concerning his 1981 convictions. As previously discussed, the trial court properly refused to permit the cross-examination under Rule 609, SCRE. Thus, the Mizzells were not prohibited from engaging in *otherwise appropriate* cross-examination designed to impeach Steele. Furthermore, this evidence was irrelevant to the question of their guilt. The trial court, therefore, properly exercised its discretion in preventing this cross-examination.

### B. Pending Penal Liability

 We are also unpersuaded by the Mizzells' argument that their Confrontation Clause rights were violated when the trial court prevented them from asking Steele about his potential penal liability.

At the time of trial, Steele was under indictment for the same offenses as the Mizzells. The trial court refused to allow the Mizzells to cross-examine Steele regarding the potential sentences he could receive if convicted. Because the Mizzells were being tried for the same crimes as Steele, the trial court ruled the sentences he faced if convicted were irrelevant and inadmissible. The trial court perceived this line of questioning as an attempt to tell the jury the sentences the Mizzells could receive if convicted but permitted the Mizzells to ask Steele whether he faced a lengthy prison term.

We find the Mizzells' right to confront Steele on his potential bias or motive for testifying was protected. Steele admitted he faced a long sentence for his participation in the burglary and larceny. Furthermore, the Mizzells questioned Steele about his reason for providing a self-incriminating written statement and whether he hoped to receive a "deal" for his testimony. We find no constitutional violation here.

## CONCLUSION

For the reasons discussed above the Mizzells' appealed convictions are

**AFFIRMED.**

HEARN, C.J., and STILWELL, J., concur.