563 S.E.2d 315

**The STATE, Respondent,**

v.

**Jamie MIZZELL and Jimmy Allen "Tootie" Mizzell, Petitioners.**

**No. 25456.**

Supreme Court of South Carolina.

Heard March 20, 2002.

Decided April 29, 2002.

---

Chief Attorney Daniel T. Stacey, of South Carolina Office of Appellate Defense; and Robert Edward Lominack, of Law Offices of David I. Bruck, of Columbia, for petitioners.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Charles H. Richardson, Senior Assistant Attorney General Harold M. Coombs, Jr., of Columbia; and Solicitor Randolph Murdaugh, III, of Hampton, for respondent.

BURNETT, Justice.

Brothers Jamie Mizzell ("Jamie") and Jimmy "Tootie" Mizzell ("Tootie") (collectively, "petitioners") were charged with first degree burglary, grand larceny, and possession of a firearm during the commission of a violent crime. At trial, a jury convicted petitioners of second degree burglary and grand larceny. The Court of Appeals affirmed. *See State v. Mizzell,* 341 S.C. 529, 535 S.E.2d 134 (Ct.App.2000). We granted certiorari to review the Court of Appeals' decision. We reverse.

### FACTS

On September 24, 1996, Howard Woods' ("Woods") home was burglarized. Woods stated he left his home in the afternoon, returning later to find the front door kicked in and numerous guns missing. Woods testified knowing petitioners from a hunting club.

Investigator Fowler ("Fowler"), the lead investigator, testified that upon reaching Woods' home, he found the door opened. He discovered no fingerprints or any other physical

evidence to further the investigation. After receiving a tip, Fowler went to the home of Thomas Harley ("Harley") and recovered nine of Woods' rifles. Harley admitted buying rifles from petitioners. Harley testified a man and woman were in the truck with petitioners when he bought the rifles.

The State's key witness, Donald Steele ("Steele"), testified he and his wife accompanied petitioners to Woods' home. Steele drove a small pick-up truck to the home. After arriving, Steele claimed petitioners kicked in the door and entered. Steele testified petitioners exited the home carrying guns. Steele further testified to witnessing petitioners sell several of the guns to a man, presumably referring to Harley.

On cross-examination, Steele admitted the State charged him with the same crimes as petitioners. The trial court excluded evidence of the possible sentence Steele faced but permitted petitioners to examine Steele about the sentence in general terms.

### ANALYSIS/DISCUSSION

Petitioners argue the trial court erred in violating their rights under the Sixth Amendment's Confrontation Clause [1] by limiting the cross-examination of Steele. Specifically, petitioners assert the trial court should have permitted defense counsel to elicit from Steele the possible punishment he could receive if he were convicted of the charged crimes. We agree.

■ "The Sixth Amendment rights to notice, confrontation, and compulsory process guarantee that a criminal charge may be answered through the calling and interrogation of favorable witnesses, the cross-examination of adverse witnesses, and the orderly introduction of evidence." *State v. Graham*, 314 S.C. 383, 385, 444 S.E.2d 525, 527 (1994) (quoting *State v. Schmidt*, 288 S.C. 301, 303, 342 S.E.2d 401, 402 (1986)). The Sixth Amendment is applicable to the states through the Fourteenth Amendment.[2] *See Pointer v. Texas*, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965).

---

1. U.S. Const.Amend. VI.

2. U.S. Const.Amend. XIV.

█ A defendant has the right to cross-examine a witness concerning bias under the Confrontation Clause. *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); *State v. Brown*, 303 S.C. 169, 399 S.E.2d 593 (1991). " 'On cross-examination, any fact may be elicited which tends to show interest, bias, or partiality' of the witness." *State v. Brewington*, 267 S.C. 97, 101, 226 S.E.2d 249, 250 (1976) (quoting 98 C.J.S. *Witnesses* § 560a (1957)); *see* Rule 608(c), SCRE ("Bias, prejudice or any motive to misrepresent may be shown to impeach the witness either by examination of the witness or by evidence otherwise adduced.").

█ A criminal defendant may show a violation of the Confrontation Clause "by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby 'to expose to the jury the facts from which jurors ... could appropriately draw inferences relating to the reliability of the witness.' " *Delaware v. Van Arsdall*, 475 U.S. 673, 680, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674, 684 (1986). The trial judge retains discretion to impose reasonable limits on the scope of cross-examination. *State v. Sherard*, 303 S.C. 172, 399 S.E.2d 595 (1991); *accord Delaware v. Van Arsdall*, *supra*. Before a trial judge may limit a criminal defendant's right to engage in cross-examination to show bias on the part of the witness, the record must clearly show the cross-examination is inappropriate. *State v. Graham*, *supra*. If the defendant establishes he was unfairly prejudiced by the limitation, it is reversible error. *State v. Brown*, *supra*.

The trial judge prohibited questioning Steele about a specific possible sentence because the charges against Steele and petitioners were the same. "The purpose of preventing disclosure of the potential sentence facing the defendant is that such evidence is irrelevant to the jury and could possibly prejudice the State's right to a fair trial." *Illinois v. Brewer*, 245 Ill.App.3d 890, 185 Ill.Dec. 917, 615 N.E.2d 787, 790 (1993). We implicitly recognized this interest in *State v. Brown*, *supra*.

█ The jury is, generally, not entitled to learn the possible sentence of a defendant because the sentence is irrelevant to finding guilt or innocence. However, other constitutional con-

cerns, such as the Confrontation Clause, limit the applicability of this rule in circumstances where the defendant's right to effectively cross-examine a co-conspirator witness of possible bias outweighs the need to exclude the evidence.

In *State v. Brown, supra,* we held the trial court erred in excluding evidence of a witness' possible punishment because it would allow the jury to learn of Brown's own potential sentence, if convicted.

The witness admitted, on direct examination, she testified in exchange for being charged with only one count of conspiracy for which she could face a maximum sentence of seven and one-half years. On cross-examination, the trial judge precluded the defense from asking the witness the maximum punishment she faced if found guilty of trafficking in cocaine, the crime initially charged against her.

We found Brown was unfairly prejudiced because the witness "was permitted to avoid a mandatory prison term of more than three times the duration she would face on her plea to conspiracy [was] critical evidence of potential bias that appellant should have been permitted to present to the jury." *Id.,* 303 S.C. at 171, 399 S.E.2d at 594. Moreover, the witness provided the only evidence to link Brown to the cocaine trafficking. *Id.,* 303 S.C. at 171–72, 399 S.E.2d at 594.

Because of the error of law and the unfair prejudice to Brown, we held the denial of meaningful cross-examination outweighed the State's interest in excluding the evidence. *Id.,* 303 S.C. at 172, 399 S.E.2d at 594.

The case *sub judice* is distinctive because the co-conspirator witness was charged with the same crimes as petitioners but had neither agreed to a plea bargain nor pled guilty. Petitioners assert the State should not be allowed to rely on this distinction to exclude this testimony because the absence of the agreement, if anything, suggests the witness will testify more favorably to the State's position. Petitioners argue Steele would reasonably have felt the quality of his cooperation would determine the degree of benefit he would later receive. *See Boone v. Paderick,* 541 F.2d 447, 451 (4th Cir.1976) ("[A] promise to recommend leniency (without assurance of it) may be interpreted by the promisee as contingent upon the quality of the evidence produced; the more uncertain

the agreement, the greater the incentive to make the testimony pleasing to the promisor."). We agree.

Generally, a judge may prevent the introduction of evidence which informs the jury of the possible sentence defendants may receive if convicted because it is either irrelevant or substantially prejudicial. *See Illinois v. Brewer, supra; State v. Alexander,* 303 S.C. 377, 401 S.E.2d 146 (1991) (construing Rule 403, SCRE, to allow a judge to exclude relevant evidence if the danger of unfair prejudice substantially outweighs its probative value); Rule 402, SCRE ("Evidence which is not relevant is not admissible.").

■ The fact the witness has yet to reach a plea bargain or been found guilty should not prevent the admission of such evidence. The lack of a negotiated plea, if anything, creates a situation where the witness is more likely to engage in biased testimony in order to obtain a future recommendation for leniency. Accordingly, we conclude the Court of Appeals erred in holding the trial judge properly excluded testimony concerning Steele's potential sentence if convicted of the same crimes as petitioners.

■ Our inquiry does not end upon finding the trial court committed an error in limiting the cross-examination of Steele. "A violation of the defendant's Sixth Amendment right to confront the witness is not *per se* reversible error" if the "error was harmless beyond a reasonable doubt." *Graham,* 314 S.C. at 385, 444 S.E.2d at 527. Whether an error is harmless depends on the particular facts of each case and upon a host of factors including:

> the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and of course the overall strength of the prosecution's case.

*Van Arsdall,* 475 U.S. at 684, 106 S.Ct. at 1438, 89 L.Ed.2d at 686; *see State v. Clark,* 315 S.C. 478, 445 S.E.2d 633 (1994) (applying *Van Arsdall* factors); *see also State v. Graham, supra,* (the *Van Arsdall* factors are not exhaustive).

"Harmless beyond a reasonable doubt" means the reviewing court can conclude the error did not contribute to the verdict beyond a reasonable doubt. *Arnold v. State,* 309 S.C. 157, 420 S.E.2d 834 (1992). In determining whether an error is harmless, "the reviewing court must review the entire record to determine what effect the error had on the verdict." *Clark,* 315 S.C. 478, 484, 445 S.E.2d 633, 636 (Toal, J. dissenting); *see, e.g., Arnold v. State, supra.*

Considering the *Van Arsdall* factors, we note much of Steele's testimony was either cumulative or corroborated by other witnesses. Both Woods and Fowler testified the front door to the home had been kicked in or tampered with to gain entry. Harley testified he bought rifles from petitioners and observed a male and female (presumably Steele and his wife) in the truck.

Critically, however, Steele was the only witness to testify as an eyewitness to petitioners' burglary of the home. The lack of physical evidence placing petitioners at the scene enhanced the importance of Steele's testimony. As in *Brown,* the co-conspirator witness is the only link placing petitioners at the scene of the crime.

The State contends any error is harmless because the trial judge permitted petitioners to cross-examine Steele about any plea agreement and to question the veracity of his testimony. Additionally, the State asserts the trial court's error did not prejudice the outcome of the trial because Steele was allowed to testify, if convicted, he could go to jail for a "long time."

Steele's general admission he "could get a long sentence for these crimes," denies petitioners' Confrontation Clause rights under the Sixth Amendment. A "long sentence" may have different meanings to different jurors.

We believe the defendant's Sixth Amendment right to effective cross-examination in this case outweighs the right of the State to shield the jury from knowledge of the possible sentence for a defendant who faces the same charges as a witness against him. A witness admitting he is subject to a "long sentence" is quite different from a witness admitting he could be sentenced to a maximum of life in prison, the

sentence faced by Steele if convicted of first degree burglary.[3] *See* S.C.Code Ann. § 16–11–311(B) (Supp.2001).

In *State v. Sherard, supra,* two juvenile co-conspirators implicated Sherard in a robbery-murder scheme. In exchange for their testimony, the two were allowed to plead guilty as accessories in family court. Sherard was waived up to general sessions court on charges of murder and attempted armed robbery.

On cross-examination one of the co-conspirators admitted his charges of murder and attempted armed robbery were reduced in exchange for his testimony. He further testified that if he were found guilty of murder in general sessions court, he would face a mandatory life sentence. However, the trial judge prevented Sherard from asking the second co-conspirator witness the penalty he could have suffered if convicted of the original charges. The trial judge did allow the witness to testify he knew the reduced charges would result in much less severe penalties.

We found Sherard suffered no prejudice from the trial court's decision. Critically, we distinguished our decision from *Brown* where "no evidence was presented to the jury regarding the sentence the witness avoided in pleading guilty and testifying for the State." *Id.,* 303 S.C. at 175, 399 S.E.2d at 596. While we found the trial court afforded the defense ample opportunity to demonstrate the bias of the witnesses, we found it critical that "during cross-examination of [the first co-conspirator witness], the jury was made fully aware that a charge of murder carries a mandatory life sentence." *Id.* In the present case, the jury only knew Steele was subject to the vagaries of a "long" prison term, whatever that may mean.

Because Steele was the only witness to directly link petitioners to the burglary, we cannot say the trial court's error was harmless beyond a reasonable doubt. *See Arnold v. State.* Accordingly, we find the trial court committed prejudicial error in limiting petitioners cross-examination into Steele's possible sentence.

---

**3.** A "[b]urglary in the first degree is a felony punishable by life imprisonment. For purposes of this section, "life" means until death. The court, in its discretion, may sentence the defendant to a term of not less than fifteen years." S.C.Code Ann. § 16–11–311(B) (Supp.2001).

CONCLUSION

For the aforementioned reasons we REVERSE the court below.

TOAL, C.J., MOORE and WALLER, JJ., concur.

PLEICONES, J., concurring in result.