THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT
BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING
EXCEPT AS PROVIDED BY RULE 239(d)(2), 
 SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
The State,       
Respondent,
 
 
 

v.

 
 
 
Gary W. Bennett,       
Appellant.
 
 
 

 Appeal From Horry County
John M. Milling, Circuit Court Judge 

Unpublished Opinion No. 2004-UP-439
Heard June 10, 2004  Filed August 13, 
 2004

AFFIRMED

 
 
 
Chief Attorney Joseph L. Savitz, III, of Columbia, for 
 Appellant.
Attorney General Henry Dargan McMaster, Chief Deputy Attorney 
 General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelanka 
 and Senior Assistant Attorney General William E. Salter, III, all of Columbia; 
 and Solicitor John Gregory Hembree, of Conway, for Respondent.
 
 
 

 PER CURIAM:  Gary Wayne Bennett 
 appeals his convictions for armed robbery and murder in connection with the 
 death of Eva Marie Martin, arguing the trial court erred in limiting his cross-examination 
 of the States key witness, Andrew Lindsay, on Lindsays prior conviction for 
 second-degree murder.  Bennett argues he should have been able to impeach Lindsay 
 by revealing the specific nature of Lindsays prior murder conviction, rather 
 than being limited to a general characterization of the conviction as an unspecified 
 felony.  We agree, but find the error harmless and affirm.
FACTS
Martin was discovered murdered in her home on May 
 23, 2000.  Earlier that month, Bennett and Lindsay had plotted to rob a Horry 
 County Taco Bell restaurant managed by Martin.  Martin was an acquaintance and 
 a coworker of Bennetts common-law wife.  Although Bennett and Lindsay obtained 
 a key to the restaurant, they were unable to open its safe because they did 
 not have the safes combination 
Approximately two months later, police questioned 
 Lindsay regarding Martins murder. [1]   Lindsay initially provided police at least two statements 
 denying knowledge of or involvement in Martins murder.  He later recanted his 
 statement, admitted involvement in Martins murder, but implicated Bennett as 
 the murderer.  Lindsay was later charged with Martins murder, but entered a 
 plea bargain with the State.  Pursuant to the agreement, Lindsay pled guilty 
 to being an accessory after the fact, in exchange for which he would testify 
 that Bennett killed Martin.           
Bennett was subsequently charged with and tried 
 for murder and armed robbery in connection with Martins death.  The State moved 
 in imine to limit Bennetts impeachment of Lindsay by prohibiting testimony 
 regarding Lindsays 1991 second-degree murder conviction from Illinois.  Conversely, 
 Bennett wanted to impeach Lindsay on cross-examination by revealing the fact 
 that he had previously been convicted of murder.  It is unchallenged that Lindsays 
 murder conviction falls squarely within the admissibility parameters of Rule 
 609, SCRE. [2]   Rule 609(a)(1), 
 SCRE, provides in relevant part that impeachment of a non-defendant witnesss 
 credibility with evidence of the non-defendant witnesss past criminal convictions 
 is permissible if the crime was punishable by death or imprisonment in excess 
 of one year under the law under which the witness was convicted and if under 
 Rule 403, SCRE, the court determines that the evidences probative value is 
 not substantially outweighed by the danger of unfair prejudice. Here, the 
 trial judge indicated his intent to limit Bennett to making inquiries without 
 identifying [Lindsays 1991 second-degree murder conviction] as a second-degree 
 murder charge ostensibly out of concern that testimony regarding the specific 
 nature of Lindsays second-degree murder conviction would prejudice Bennett.  
 We are unable to discern from the record the rule of evidence or legal principle 
 relied upon by the trial judge in countermanding defense counsels intended 
 strategic use of relevant and admissible evidence.  In this regard, Bennetts 
 counsel insisted that he, not the court, assess potential prejudice arising 
 from the use of relevant and admissible evidence.  Bennetts stated strategy 
 was to confront and impeach Lindsay with every available weapon, including Lindsays 
 murder conviction.  The trial judge, nevertheless, persisted with the limitation 
 on Bennetts desired impeachment of Lindsay.
Bennett later vigorously cross-examined Lindsay 
 regarding, among other things, the details of his plea bargain, the fact that 
 he lied to police in two sworn statements before admitting involvement in Martins 
 murder, the fact that police found the Taco Bells safe combination on a piece 
 of paper in Lindsays wallet at the time of his arrest, and the fact that he 
 was currently serving a ten-year prison sentence for seven counts of second-degree 
 burglary, to which he pled guilty in 2001.  Regarding Lindsays 1991 murder 
 conviction, Bennett asked Youre a convicted felon, received a sentence of 
 fifteen years  to a charge that has nothing to do with the burglary charges 
 youre serving your time for now, isnt that right?  Lindsay replied, Yes.
In closing arguments, Bennett focused on the impact 
 of these issues on Lindsays credibility, ultimately building a case implicating 
 Lindsay as Martins murderer.  Among other things, he suggested Lindsay more 
 likely the perpetrator because while Bennett and his wife were close friends 
 with Martin, Lindsay was a mere social acquaintance less likely to care about 
 Martins welfare.  He further noted that Lindsay, not Bennett, was found in 
 possession of the safes combination, and that Lindsays plea bargain with the 
 State motivated him to falsely implicate Bennett as the murderer. 
The trial judge instructed the jury regarding witness 
 credibility and impeachment, noting that its consideration of a witnesss criminal 
 record was limited to its assessment of the witnesss credibility.  Bennett 
 was subsequently convicted for murder and armed robbery.  Because he had previously 
 been convicted of first-degree burglary, Bennett was sentenced to concurrent 
 life terms without parole under the recidivist statute. 
 [3]   This appeal follows.
STANDARD OF REVIEW
As a general rule, a trial courts ruling on the 
 proper scope of cross-examination will not be disturbed absent a manifest abuse 
 of discretion amounting to an error of law.  State v. Mitchell, 330 S.C. 
 189, 196, 498 S.E.2d 642, 645 (1998);  State v. Foster, 354 S.C. 614, 
 621, 582 S.E.2d 426, 429 (2003).  This rule is subject to the Sixth Amendments 
 guarantee of a defendants right to a meaningful cross-examination of a witness.  
 State v. Mitchell, 330 S.C. at 196, 498 S.E.2d at 645.
DISCUSSION
Bennett argues the trial court improperly 
 limited his cross-examination of Lindsay regarding Lindsays past conviction 
 for second-degree murder. [4] According to Bennett, he should 
 have been able to confront and impeach Lindsay with the murder conviction, rather 
 than the court-imposed restriction on Lindsays cross-examination.  We agree, 
 but find the error harmless.  As noted, Rule 609 permits impeachment of a non-defendant 
 witness with the witnesss criminal conviction if the crime was punishable 
 by  imprisonment in excess of one year.  This rule comports with the Sixth 
 Amendment to the United States Constitutions Confrontation Clause, through 
 which a defendant has the right to cross-examine a witness concerning bias or 
 partiality.  State v. Mizzell, 349 S.C. 326, 331, 563 S.E.2d 315, 319 
 (2002).  On cross-examination, any fact may be elicited which tends to show 
 the witnesss interest, bias, or partiality.  Id.  Before a trial judge 
 may limit a criminal defendants right to engage in cross-examination to show 
 bias on the part of the witness, the record must clearly show the cross-examination 
 is inappropriate.  Id.  In this case, Lindsay was a witness previously 
 convicted of a crime, second-degree murder, which resulted in a sentence of 
 fifteen years.  Thus, we find that the trial judge properly concluded that the 
 evidence of Lindsays murder conviction was admissible under Rule 609(a)(1) 
 of the South Carolina Rules of Evidence.   
Here, the trial judges basis for finding the cross-examination 
 inappropriate arose from his concern regarding the potential prejudice to 
 Bennett, who advocated admitting the evidence.  The court expressed concern 
 that a jury might determine Bennett had committed the murder because Lindsay, 
 his friend and co-defendant, had a previous murder conviction.  We find this 
 rationale not only erroneous, but also an unwarranted intrusion into strategy 
 determinations vested solely in the accused and his counsel. 
The authority to decide the objectives and means 
 of litigation is divided between the client and the attorney.  Alex Sanders 
 & John S. Nichols, Trial Handbook for South Carolina Lawyers § 1:4, 
 23 (2d ed. 2002); see Rule 407, SCAR, Rules of Prof. Conduct, 1.2(a) 
 (a lawyer shall abide by a clients decisions concerning the objectives of representation 
 and shall consult with the client as to the means by which they are to be pursued);  
 cf. Whitehead v. State, 308 S.C. 119, 122, 417 S.E.2d 529, 531 
 (1992) (Stating that in the context of post-conviction relief that [c]ourts 
 must be wary of second-guessing counsels trial tactics; and where counsel articulates 
 a valid reason for employing certain strategy, such conduct will not be deemed 
 ineffective assistance of counsel.).  Subject to a few exceptions, the client 
 makes all decisions regarding the objectives of litigation and representation.  
 Sanders & Nichols, Trial Handbook for South Carolina Lawyers, § 1:4 
 at 23.  However, [t]he lawyer generally decides the means to be used to achieve 
 the clients legitimate objectives, especially legal and tactical questions.  
 Id. at 24.  Where, as here, proposed evidence is relevant and admissible, 
 and its use is merely a function of defense strategy involving the weighing 
 of potential benefits and risks of prejudice, the decision of the defendant 
 and his counsel controls.  The trial judges decision here directly contravened 
 the strategic tactics of Bennetts counsel and had the effect of limiting Bennetts 
 confrontation and impeachment of Lindsay.  We find this an improper limitation 
 of Bennetts right to confront a witness, amounting to legal error.
However, an improper 
 limitation of the defendants right to confront a witness is not per se 
 reversible if the error was harmless beyond a reasonable doubt.  State 
 v. Mizzell, 349 S.C. at 333, 563 S.E.2d at 318.  An error is harmless beyond 
 a reasonable doubt where, in view of the entire record, the error did not contribute 
 to the verdict beyond a reasonable doubt.  See Id., 349 at 334, 
 563 S.E.2d at 319.  While we recognize the importance of Lindsays testimony 
 to the States case, we are persuaded that the error is harmless in light of 
 the overwhelming level of impeachment otherwise permitted during Bennetts cross-examination 
 of Lindsay, including the details of his plea bargain, the fact that he was 
 in prison for multiple counts of burglary, and the fact that he had lied to 
 police in multiple statements before admitting his involvement in the crime.  
 We further note that some impeachment value was derived from the reference to 
 the Lindsays murder conviction as a felony for which he received a fifteen 
 year sentence.  Moreover, Bennett was allowed to argue, without objection, 
 the issue of Lindsays third-party guilt during his closing argument.  In light 
 of the totality of these circumstances, we find the error harmless beyond a 
 reasonable doubt.  This conclusion is consistent with decisions in other jurisdictions.  
 Where a trial court errs in limiting a defendants ability on cross-examination 
 to confront and impeach a witness, such error is generally harmless when the 
 cross-examiner is allowed to otherwise pursue a thorough and meaningful cross-examination.  
 See Artis v. U.S., 505 A.2d 52 (D.C.App. 1986) (In a prosecution 
 for burglary and larceny it was error to curtail appropriate line of cross-examination 
 of prosecution witness concerning juvenile charges pending against him, but 
 such error was harmless where cross-examination otherwise highlighted witnesss 
 motives to curry favor with the government to escape prosecution for burglaries 
 and other offenses and to avoid possible revocation of his probation);  Morris 
 v. State, 166 Ga.App. 137, 303 S.E.2d 492 (1983) (Error occurred in burglary 
 prosecution where defendant was precluded from cross-examining accomplice who 
 testified for prosecution regarding existence of any pending charges and promises 
 of immunity, but error was harmless where defendant was able to question defendant 
 regarding his motives through another line of questioning);  State v. Long, 
 372 N.E.2d 804 (Ohio, 1978) (Where examination of record in homicide prosecution 
 disclosed that defense counsel aggressively cross-examined eyewitness to homicide 
 and that such examination, among other things, elicited witness's admission 
 that at time of trial he was incarcerated and had been convicted of receiving 
 stolen property, even if trial court erred in not allowing cross-examination 
 of such witness as to whether he had pending motion for shock probation, no 
 material prejudice was demonstrated by record and any error was harmless beyond 
 reasonable doubt); see generally, R.P. Davis, Annotation, Preventing 
 or Limiting Cross-Examination Of Prosecutions Witness As To His Motive For 
 Testifying, 62 A.L.R.2d 610 (1958 & 2004 Supp.).  Accordingly, Bennetts 
 convictions are
AFFIRMED.
ANDERSON, HUFF, and KITTREDGE, 
 JJ., concur.

 
 
 [1]        In the interim, Lindsay and his wife moved from South Carolina.

 
 [2]        We are not confronted 
 with that portion of Rule 609, SCRE, dealing with use of a prior conviction 
 against an accused.  Rule 609, SCRE, and related case law provide for considerations 
 unique to the accused.  See Green v. State, 338 S.C. 428, 433-34, 
 527 S.E2d. 98, 101 (2000) (Declining to hold past convictions of the accused 
 inadmissible in all cases, but instead finding that a trial court should weigh 
 the probative value of the prior convictions against their prejudicial effect 
 to the accused and determine, in its discretion, whether to admit the evidence.  
 In doing so, the factors a trial court should consider are (1) the impeachment 
 value of the prior crime; (2) the point in time of the conviction and the 
 witness subsequent history; (3) the similarity between the past crime and 
 the charged crime; and (5) the centrality of the credibility issue.).  The 
 Green factors are not implicated by the testimony of a witness who 
 is not the accused, such as Lindsay.

 
 [3]        South Carolinas recidivist 
 statute, S.C. Code Ann. §17-25-45 (Supp. 2000), mandates, among other things, 
 an automatic life without parole sentence when a person has been convicted 
 of more than one most serious offense.  Such most serious offenses, as 
 defined by the statute, include first-degree burglary, murder, and armed robbery.  
 Here, the State notified Bennett and his counsel that because Bennett had 
 a prior first-degree burglary conviction, he would be subject to a sentence 
 of life in prison without parole if convicted on either the murder or armed 
 robbery charge.

 
 [4]        Bennett objected to the 
 courts limitation of his cross-examination of Lindsay in the in limine 
 hearing, but he did not renew his objection when Lindsay testified.  Generally, 
 an in limine ruling does not preserve an issue for review because a 
 motion in limine is not a final determination.  State v. Forrester, 
 343 S.C. 637, 642, 541 S.E.2d 837, 840 (2001).  An issue ruled upon in an 
 in limine hearing is therefore not preserved for appellate review unless 
 the moving party makes a contemporaneous objection when the evidence is introduced, 
 except where the judges ruling is, in effect, a final ruling.  Id.  
 Here, due to the circumstances surrounding the trial judges ruling in the 
 present case, the State conceded at oral argument that the issue is preserved 
 for review.  We accept the States stipulation and address the issue on its 
 merits.