**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

The State, Respondent,

v.

Venancio Diaz Perez, Appellant.

Appellate Case No. 2013-000179

---

Appeal From Charleston County
J. C. Nicholson, Jr., Circuit Court Judge

---

Unpublished Opinion No. 2015-UP-217
Heard February 5, 2015 – Filed April 29, 2015
Withdrawn, Substituted, and Refiled May 8, 2015

---

**AFFIRMED IN PART, REVERSED IN PART, and REMANDED**

---

Jason Scott Luck, of The Seibels Law Firm, P.A., of Charleston, and Chief Appellate Defender Robert Michael Dudek, of Columbia, for Appellant.

Attorney General Alan McCrory Wilson and Special Assistant Attorney General Amie L. Clifford, both of Columbia; and Solicitor Scarlett Anne Wilson, of Charleston, for Respondent.

---

**CURETON, A.J.:** Venancio Perez appeals his convictions for lewd act upon a minor and assault and battery of a high and aggravated nature (ABHAN), arguing the trial court erred in: (1) admitting evidence of prior bad acts; (2) limiting the cross-examination of a witness; and (3) issuing a vindictive sentence. We affirm the convictions but reverse for resentencing.

## I. PRIOR BAD ACTS

Highlighting the differences among the two victims' testimony, Perez argues the trial court erred in admitting evidence of any alleged prior bad acts he committed against Minor 2 because there was no evidence demonstrating a common scheme or plan pursuant to Rule 404(b), SCRE. We disagree.

> When determining whether evidence is admissible as common scheme or plan, the trial court must analyze the similarities and dissimilarities between the crime charged and the bad act evidence to determine whether there is a close degree of similarity. When the similarities outweigh the dissimilarities, the bad act evidence is admissible under Rule 404(b).

*State v. Wallace*, 384 S.C. 428, 433, 683 S.E.2d 275, 277-78 (2009) (internal citation omitted).

We find the trial court did not err as to this issue. Contrary to Perez's arguments, the evidence demonstrates Perez's conduct with both minors was substantially similar in nature. Here, as in *Wallace*, the similarities between the acts includes Perez's relationship to the victims (their babysitter's husband), abuse beginning at about the same age, abuse occurring at the babysitter's home, and abuse occurring while the victims played and Perez's wife attended to other children. *Id.* at 434, 683 S.E.2d at 278. Consequently, the similarities outweigh any dissimilarities; therefore, Minor 2's testimony was properly admitted. Moreover, the trial court redacted dissimilar details of sexual conduct—Minor 2's testimony regarding intercourse with Perez—to avoid unfair prejudice to Perez. Accordingly, the probative value of Minor 2's testimony as redacted substantially outweighs the danger of unfair prejudice. Rule 403, SCRE.

## II. LIMITING CROSS-EXAMINATION

Perez argues the trial court erred in limiting his cross-examination of Minor 2's mother (Mother 2). We find the trial court erred; however, the error was harmless.

"The Sixth Amendment rights to notice, confrontation, and compulsory process guarantee that a criminal charge may be answered through the calling and interrogation of favorable witnesses, the cross-examination of adverse witnesses, and the orderly introduction of evidence." *State v. Mizzell*, 349 S.C. 326, 330, 563 S.E.2d 315, 317 (2002) (quoting *State v. Graham*, 314 S.C. 383, 385, 444 S.E.2d 525, 527 (1994)). "On cross-examination, any fact may be elicited which tends to show interest, bias, or partiality of the witness." *Id.* at 331, 563 S.E.2d at 317 (internal quotation marks and citation omitted).

> A criminal defendant may show a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby to expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witness.

*State v. Pradubsri*, 403 S.C. 270, 276-77, 743 S.E.2d 98, 102 (Ct. App. 2013) (alteration in original) (quoting *Mizzell*, 349 S.C. at 331, 563 S.E.2d at 317). "The trial [court] retains discretion to impose reasonable limits on the scope of cross-examination." *Mizzell*, 349 S.C. at 331, 563 S.E.2d at 317. "Before a trial [court] may limit a criminal defendant's right to engage in cross-examination to show bias on the part of the witness, the record must clearly show the cross-examination is inappropriate." *Id.* "If the defendant establishes he was unfairly prejudiced by the limitation, it is reversible error." *Id.*

Here, the trial court erred in declining to allow cross-examination regarding Mother 2's immigration status and U visa application.[1] Despite the trial court's finding otherwise, there is no question Mother 2's veracity and potential bias was

---

[1] Federal law permits aliens or parents of minor aliens, who are the victims of certain crimes and assist law enforcement in investigating and prosecuting those crimes, to apply for a temporary "U nonimmigrant status (U visa)." *See* United States Department of Homeland Security, http://www.uscis.gov/humanitarian/victims-human-trafficking-other-crimes/victims-criminal-activity-u-nonimmigrant-status/victims-criminal-activity-u-nonimmigrant-status (last visited March 27, 2015).

an important issue.  Any evidence showing Mother 2 applied for or obtained the visa because her daughter was a victim of abuse and they both assisted with the prosecution was relevant impeachment evidence.  Mother 2's immigration status and possible visa application was relevant to any theory that the victims falsely alleged these crimes in an attempt to gain citizenship for their parents.  Further, even accepting Minor 2's testimony as true, Mother 2's U visa testimony was relevant to establish bias by demonstrating Mother 2 agreed to participate in the investigation or encouraged Minor 2 to participate in order to obtain the visa.

However, we find the error was harmless beyond a reasonable doubt.  Perez proffered no evidence Mother 2 knew about U visas before she reported Perez's acts against Minor 2.  Without such evidence, Mother 2's undocumented status made it less likely she would falsely report a crime because this would bring her to the State's attention and possibly lead to her deportation.  Moreover, nothing in Mother 2's proffered testimony suggests the State's recommendation that Mother 2 obtain a U visa was quid pro quo for her or Minor 2's testimony.  Mother 2 denied someone from the solicitor's office put her in contact with an attorney to assist with the application.  She also denied "a victim advocate or helper" put her in touch with an immigration attorney.  She simply stated she found out about the attorney assisting with the application "[w]hen we went for [Minor 2] to have her questioning and exam[,] they gave us several information sheets and that was one of them."  Also, unlike Minor 1's mother, Mother 2 denied having applied for other governmental benefits such as food stamps since she applied for the U visa.  Therefore, Mother 2's proffered testimony does not suggest "[Mother 2] was receiving assistance from the State in exchange for her daughter's testimony," or that her "testimony against Perez was 'bought and paid for' by the State via U [v]isas" as Perez argues.  *See Mizzell*, 349 S.C. at 334, 563 S.E.2d at 319 ("In determining whether an error is harmless, the reviewing court must review the entire record to determine what effect the error had on the verdict." (quotation marks and citation omitted)).

## III.   SENTENCING

Perez argues the trial court issued a sentence that was vindictive and violated Perez's due process rights.  We agree and remand for resentencing.

"A [trial court] or other sentencing authority is to be accorded very wide discretion in determining an appropriate sentence, and must be permitted to consider any and all information that reasonably might bear on the proper sentence for the particular defendant, given the crime committed."  *State v. Hicks*, 377 S.C. 322, 325, 659 S.E.2d 499, 500 (Ct. App. 2008).  "A sentence will not be overturned absent an

abuse of discretion when the ruling is based on an error of law or a factual conclusion without evidentiary support." *In re M.B.H.*, 387 S.C. 323, 326, 692 S.E.2d 541, 542 (2010). A trial court abuses its discretion in sentencing when it considers the fact that the defendant exercised his right to a jury trial. *State v. Hazel*, 317 S.C. 368, 370, 453 S.E.2d 879, 880 (1995).

We find there is a reasonable likelihood the trial court sentenced Perez on the improper basis of Perez exercising his right to go to trial. Further, the record suggests a basis for the sentence was the fact that the trial court thought Perez was guilty of the first-degree criminal sexual conduct offense for which he was not convicted. The trial court's comments justifying the increased sentence do not convince us that the sentence was imposed free of an underlying punishment for Perez going to trial. Accordingly, we remand for resentencing. *See State v. Brouwer*, 346 S.C. 375, 388, 550 S.E.2d 915, 922 (Ct. App. 2001) ("[W]e believe the mere disavowal of wrongful intent cannot remove the taint inherent in the court's commentary, especially since the record fails to reflect an otherwise appropriate basis for Brouwer's disparate sentence.").

**AFFIRMED IN PART, REVERSED IN PART, and REMANDED.**

**HUFF, J., concurs.**

**FEW, C.J., concurring:** I agree with the majority's decision to affirm the first two issues raised by Perez. As for the sentencing issue, however, I would remand for the trial court to clarify the basis on which it sentenced Perez.

When the circumstances of a sentencing proceeding raise the question of whether the sentencing judge imposed a sentence on an improper basis—such as facts not proven by the State or charges for which the defendant was not convicted—but this court cannot determine from the record whether the sentence was improper, I believe the appropriate remedy is to remand to the sentencing judge to clarify the basis upon which the sentence was imposed. Here, one portion of the sentencing judge's comments raises the question of whether the sentence was imposed on an improper basis:

> This court is . . . of the opinion that there was penetration, digital penetration based on her sworn

> testimony. The jury has found [him] not guilty. The
> court [is] of the opinion he's guilty of all the charges.

Comparing these comments with others that indicate a proper basis for sentencing, it is unclear whether the judge imposed the sentence on an improper basis. Thus, I would remand the case to the sentencing judge for clarification as to whether the sentence was imposed on the basis of facts not proven by the State or charges for which the defendant was not convicted.