731 S.E.2d 880

**The STATE, Respondent,**

v.

**Anthony GRACELY, Appellant.**

**No. 27165.**

Supreme Court of South Carolina.

Heard May 2, 2012.

Decided Aug. 29, 2012.

Chief Appellate Defender Robert M. Dudek, South Carolina Commission on Indigent Defense, of Columbia, and Reid T. Sherard, of Nelson Mullins Riley & Scarborough, of Greenville, for Appellant.

Attorney General Alan McCrory Wilson, Chief Deputy Attorney General John W. McIntosh, Senior Assistant Deputy Attorney General Salley W. Elliott, and Assistant Attorney General Joshua Richard Underwood, all of Office of the Attorney General, of Columbia, and, Solicitor William Walter Wilkins, III, of Greenville, all for Respondent.

Chief Justice TOAL.

Anthony Gracely (Appellant) appeals his conviction for conspiracy to traffic four hundred grams or more of methamphetamine in violation of section 44–53–375 of the South Carolina Code. Appellant argues that the circuit court improperly limited his cross-examination of the State's witnesses, thereby violating his rights under the Confrontation Clause of the United States Constitution. Appellant also argues that the State did not present sufficient evidence to support his conviction. We reverse.

## FACTS/PROCEDURAL HISTORY

In 2008 the State Grand Jury (SGJ) began an investigation, titled "Vanilla Ice," after a resident of Pickens County approached law enforcement and provided information regarding the sale of methamphetamine within the community. On June 10, 2009, the SGJ returned an Indictment alleging fifty-two separate crimes against various individuals. Count Two of the Indictment alleged that Appellant conspired to sell "more than four hundred grams of methamphetamine."[1] At trial, the State relied on a "historical" case, in which the central evidence presented was in the form of testimony from seven individuals also named in the Indictment. The State offered the testimony of Frank Posey, Brian Stegall, Kimberly Taylor, Joel Hall, Stacey Anderson, Ernest Craft, and Lance Halloway. The defense sought to show the potential bias of each

---

1. Counts 1, 2, and 3 of the Indictment contained allegations of conspiracy to traffic methamphetamine in violation of section 44–53–375(C) of the South Carolina Code from 2007 to 2009.

   At the time of trial, Section 44–53–375(C)(5) of the South Carolina Code provided in pertinent part:
   A person who knowingly sells, manufacturers, delivers, purchases, or brings into this State ... ten grams or more of methamphetamine or cocaine base ... is guilty of a felony which is known as 'trafficking in methamphetamine or cocaine base' and, upon conviction, must be punished as follows if the quantity involved is:
   (5) four hundred grams or more, a term of imprisonment of not less than twenty-five years nor more than thirty years with a *mandatory minimum* of term of imprisonment of twenty-five years, no part of which may be suspended nor probation granted, and a fine of two hundred thousand dollars.
   S.C.Code Ann. § 44–53–375(C)(5) (Supp.2005 & Supp.2010) (emphasis added).

witness by presenting to the jury information regarding the significantly lighter sentences these witnesses received in exchange for their testimony.

Counts One and Two of the Indictment alleged that Frank Posey conspired to traffic four hundred grams or more of methamphetamine. Defense counsel asked Posey whether trafficking four hundred grams or more of methamphetamine carried a minimum of twenty-five years' and up to thirty years' imprisonment. Posey replied "true." The State objected, and the court instructed defense counsel that the State's witnesses could be questioned about the maximum punishment, but not the mandatory minimum punishment, for those charges they had in common with Appellant. Posey admitted under cross-examination that the State allowed him to plead guilty to a first offense of trafficking ten to twenty-eight grams of methamphetamine in exchange for his cooperation. The state recommended a sentence of five years' imprisonment.

Count One of the Indictment alleged that Bryan Stegall conspired to traffic four hundred grams of methamphetamine. Count Forty-four of the Indictment alleged that Stegall distributed methamphetamine on March 19, 2008.[2] Stegall testi-

---

**2.** The Indictment alleged that several of the witness distributed methamphetamine. Unless otherwise indicated the Indictment alleged that the witnesses violated section 44–53–375(B) of the South Carolina Code.

   That section provided in pertinent part:
   A person who ... distributes ... methamphetamine or cocaine base, in violation of the provisions of Section 44–53–370, is guilty of a felony.... Possession of one or more grams of methamphetamine or cocaine base is prima facie evidence of a violation of this subsection. S.C.Code Ann. § 44–53–375(B) (Supp.2005). In 2009, at the time of the Indictment, the statute provided that a first offense must be punished by a term of imprisonment of not more than fifteen years or fined not more than twenty-five thousand dollars, or both. *Id.* Upon conviction of a second offense the statute directed the court to sentence the offender to "not less than five years nor more than thirty years." *Id.* The court could also fine the offender fifty thousand dollars in lieu of imprisonment, or impose both penalties. *Id.* For a third or subsequent offense, the statute provided that the offender "be imprisoned not less than fifteen years nor more than thirty years, or fined not more than fifty thousand dollars, or both." *Id.* In 2010, the General Assembly modified the statute and reduced the mandatory minimum sentence for a third offense to ten years. *Id.* § 44–53–375(B) (Supp.2010).

fied that Appellant would "front"[3] him methamphetamine for his own use, and to sell on Appellant's behalf. Stegall testified that he would also bring other individuals to Appellant to buy methamphetamine, and in return Appellant would give Stegall a proportionate amount of drugs. Stegall testified that, in exchange for his cooperation, the State allowed him to plead guilty to a first offense of trafficking ten grams, but less than twenty-eight grams, of methamphetamine. This charge carried a sentence of no less than three years but a maximum of ten years' imprisonment. Additionally, the State allowed Stegall to plead guilty to a first offense of distribution of methamphetamine, despite previous convictions for possession and possession with intent to distribute methamphetamine. Stegall testified that he originally faced up to thirty years' imprisonment for trafficking more than four hundred grams of methamphetamine and that he could have been charged in Count Two, with Appellant, and faced up to another thirty years' imprisonment. Defense counsel also elicited testimony from Stegall that he would have faced another thirty years' imprisonment because the current charges would have constituted his third offense for distribution of methamphetamine. Instead, the State recommended that Stegall receive a fifteen year sentence for these charges in exchange for his testimony.

Following Stegall's testimony, defense counsel requested the trial court reconsider the cross-examination limitations. According to the defense, it was critical to present to the jury the possible credibility issues with a witness that they knew would go to jail "for twenty-five years at eighty-five percent." The State argued that revealing the mandatory minimum sentence would prejudice the prosecution because the jury would understand that "they're going to be putting a man in jail for twenty-five years." The court agreed with the State:

Well, I believe that . . . with your skills that you'll be able to cross examine these witnesses sufficiently, showing the

---

**3.** "Fronting" provides a convenient basis for the government to establish a conspiracy between those engaged in the drug trade. The party providing the drugs will give the receiving party the product essentially on credit. The receiving party will then pay for the drugs following redistribution, thereby creating a fund with which to pay for the drugs. *See, e.g., United States v. Ferguson,* 35 F.3d 327, 331–32 (7th Cir.1994); *State v. Hammitt,* 341 S.C. 638, 645, 535 S.E.2d 459, 463 (Ct.App.2001).

amount of time they could get. I believe to bring up a minimum sentence, even though your intent is to impeach this witness, the ripple effect is that it's going to, I think, prejudice the State because of what the jury is going to now have in their mind, that if we convict this person, it's going to be a twenty-five year [sentence].

The court also ruled that defense counsel could question the State's witnesses regarding the mandatory minimum sentences they avoided for those crimes in which the Appellant was not also charged.

Count Three of the Indictment alleged that Kimberly Taylor conspired to traffic four hundred or more grams of methamphetamine. Counts Twenty-two and Twenty-three of the Indictment alleged that Taylor knowingly distributed methamphetamine on May 19 and June 2, 2008. Taylor testified that she purchased methamphetamine from Lance Holloway, and that Appellant provided Holloway drugs for re-distribution and sale. She described a drug transaction in which Appellant provided two ounces of methamphetamine to Holloway and in turn Taylor purchased one of those ounces to use and resell. Taylor also testified that Holloway and Gracely sold Taylor's ex-boyfriend an ounce of methamphetamine for $1,600. In exchange for her cooperation, Taylor pled guilty to a second offense of trafficking twenty-eight to one hundred grams of methamphetamine and received a twenty year sentence. Taylor admitted to three prior convictions for drugs including cocaine and marijuana. Taylor admitted under cross-examination that she did not identify Appellant until after accepting a plea deal. Defense counsel also pointed out that Taylor faced a minimum of thirty years' and a maximum of ninety years' imprisonment before accepting a plea deal for a twenty year sentence in exchange for cooperating with the State.

Counts Two and Three of the Indictment alleged that Joel Hall conspired to traffic four hundred or more grams of methamphetamine. Counts Twenty-five, Twenty-six, and Twenty-seven of the Indictment alleged that Hall distributed methamphetamine on April 1, 22, and 30, 2008. Hall testified that on one occasion he purchased half an ounce of methamphetamine from Appellant. In exchange for his cooperation, the State allowed Hall to plead guilty to a first offense of

trafficking ten to twenty-eight grams of methamphetamine and a first offense of distribution of methamphetamine, and gave Hall a favorable sentencing recommendation of ten years' imprisonment. Hall had previously been convicted of possession of marijuana and obtaining controlled substances through fraud. Defense counsel pointed out that Hall faced a minimum of fifteen years' imprisonment, and a possibility of over one hundred years' imprisonment if convicted of the original charges.

Count Two of the Indictment alleged that Stacey Anderson conspired to traffic four hundred or more grams of methamphetamine. Counts Nine and Ten of the Indictment alleged that Anderson distributed methamphetamine on February 10 and May 7, 2008. Anderson testified that he regularly sold methamphetamine for $1,450 per ounce, and that Appellant owed him $7,300 for methamphetamine. In exchange for his testimony, Anderson pled guilty to trafficking twenty-eight to one hundred grams of methamphetamine and a first offense of distribution of methamphetamine. Anderson received this deal despite his prior convictions for possession with intent to distribute. Anderson testified that in exchange for his cooperation he would receive a fifteen year prison sentence to run concurrently with federal gun charges.

Count Two of the Indictment alleged that Ernest Craft conspired to traffic four hundred or more grams of methamphetamine. Count Twenty-one of the Indictment alleged that Craft distributed methamphetamine on June 5, 2008. Craft testified that he observed methamphetamine in Appellant's possession, and witnessed Appellant sell methamphetamine. Craft also testified that Anderson supplied Appellant with methamphetamine. Because he cooperated with the State's prosecution of Appellant, Craft pled guilty to trafficking a lesser amount of methamphetamine, twenty-eight to one hundred grams. Craft also pled guilty to a first offense of distribution of methamphetamine despite numerous prior convictions for possession of methamphetamine. Defense counsel pointed out that Craft faced sixty years' imprisonment before the State offered him a fifteen year sentence in exchange for his cooperation.

Counts Two and Three of the Indictment alleged that Lance Holloway conspired to traffic four hundred grams of methamphetamine. Count Twenty of the Indictment alleged that Holloway distributed methamphetamine on August 1, 2008. Holloway testified that between June 2007 and February 2008 he and Appellant sold methamphetamine together at a rate of one and a half to two ounces per week. Holloway faced thirty years' imprisonment for each trafficking count, and an additional fifteen to thirty years' imprisonment for distribution. Thus, Holloway could have been sentenced to between seventy five years' to ninety years' imprisonment. However, like Craft, Holloway pled guilty to trafficking a lower amount of methamphetamine. Additionally, the State allowed Holloway to plead guilty to a first offense of distribution of methamphetamine, despite prior convictions for drug offenses including possession with intent to distribute cocaine. Holloway received a twelve year sentence for his cooperation.

Following the conclusion of the State's case, defense counsel moved for a directed verdict. The court denied the motion, and the jury found Appellant guilty of conspiracy to traffic four hundred or more grams of methamphetamine. The court sentenced Appellant to twenty-eight years' imprisonment. Appellant appealed, and this Court certified the case pursuant to Rule 204(b), SCACR.

## ISSUES PRESENTED

I. Whether the trial court improperly limited the scope of defense counsel's cross-examination of the State's witnesses.

II. Whether the trial court erred in denying Appellant's motion for a directed verdict.

## STANDARD OF REVIEW

This Court will not disturb a trial court's ruling concerning the scope of cross-examination of a witness to test his or her credibility, or to show possible bias or self-interest in testifying, absent a manifest abuse of discretion. *State v. Johnson*, 338 S.C. 114, 124–25, 525 S.E.2d 519, 524 (2000) (citing *State v. Smith*, 315 S.C. 547, 551, 446 S.E.2d 411, 413–14 (1994)). When reviewing the denial of a motion for direct-

ed verdict, this Court employs the same standard as the trial court by viewing the evidence and all reasonable inferences in the light most favorable to the non-moving party. *Steinke v. S.C. Dep't of Labor, Licensing, and Regulation*, 336 S.C. 373, 386, 520 S.E.2d 142, 148 (1999). The trial court will only be reversed when there is no evidence to support the ruling below. *See Creech v. S.C. Wildlife & Marine Res. Dep't*, 328 S.C. 24, 29, 491 S.E.2d 571, 573 (1997).

## LAW/ANALYSIS

### I. Whether the trial court improperly limited the scope of defense counsel's cross-examination of the State's witnesses.

Appellant argues that the trial court erred in refusing to allow defense counsel to cross-examine the State's witnesses regarding the mandatory minimum sentences they avoided by testifying against Appellant. We agree.

### A. Cross Examination

The Confrontation Clause provides "in all criminal prosecutions, the accused shall enjoy the right to ... be confronted with the witnesses against him." U.S. Const. amend. VI. The Confrontation Clause guarantees a defendant the opportunity to cross-examine a witness concerning bias. *State v. Clark*, 315 S.C. 478, 481, 445 S.E.2d 633, 634 (1994) (citing *State v. Brown*, 303 S.C. 169, 171, 399 S.E.2d 593, 594 (1991)). A defendant demonstrates a Confrontation Clause violation when he is prohibited from "engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias ... from which jurors ... could draw inferences relating to the reliability of the witness." *State v. Stokes*, 381 S.C. 390, 401–02, 673 S.E.2d 434, 439 (2009) (citing *Delaware v. Van Arsdall*, 475 U.S. 673, 680, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986)) (alteration in original).

In *State v. Brown*, 303 S.C. 169, 399 S.E.2d 593 (1991), one of the State's chief witnesses, Yolanda Bethel, testified that at the request of a man named "Henry," she agreed to transport a quantity of cocaine from Miami, Florida to Charleston, South Carolina. *Id.* at 170, 399 S.E.2d at 594. Upon her arrival, police apprehended Bethel and discovered a large quantity of

cocaine in her suitcase. *Id.* at 170–71, 399 S.E.2d at 594. Bethel agreed to cooperate with law enforcement by contacting the defendant and accompanying the agents to deliver the suitcase to him. *Id.* at 171, 399 S.E.2d at 594.

Bethel testified that in return for her cooperation, she was allowed to plead guilty to one conspiracy charge for which she would receive a maximum sentence of seven and one-half years' imprisonment. *Id.* On cross-examination, Bethel admitted that she was originally charged with trafficking in cocaine, but that the charge was dropped as part of the plea agreement. *Id.* Defense counsel attempted to elicit from Bethel the punishment for trafficking in cocaine, but the trial judge sustained the prosecutor's objection to the line of questioning. *Id.* The defendant appealed and argued that the trial judge abused its discretion in limiting the cross-examination. *Id.*

This Court held that this limitation unfairly prejudiced the defendant:

> The sentence for trafficking in cocaine in the amount in question here is a mandatory one of at least twenty-five years without parole.... The fact Bethel was permitted to avoid a mandatory prison term of more than three times the duration she would face on her plea to conspiracy is critical evidence of potential bias that [defendant] should have been permitted to present to the jury. Moreover, Bethel's testimony was a crucial part of the State's case since she provided the only evidence of [defendant]'s knowing involvement in the drug transaction. We reject the State's argument that inquiry into the punishment was properly excluded because it would have allowed the jury to learn of [defendant]'s own potential sentence if convicted. We conclude appellant's right to meaningful cross-examination outweighs the State's interest here.

*Id.* at 171–72, 399 S.E.2d at 594.

■ The facts of the instant case are similar. Each of the State's witnesses faced a mandatory minimum sentence significantly longer than the sentence they received in exchange for their cooperation. The trial court allowed defense counsel to cross-examine the witnesses regarding possible bias, but improperly prevented questioning which would have examined

the extent of that bias and the witnesses' possible motivations for testifying against Appellant.

In order to secure a conviction in the instant case, the State made certain "deals" with cooperating witnesses. The State allowed Posey to plead guilty to a lesser trafficking charge which carries a mandatory minimum of three years' imprisonment. This plea deal did not merely allow Posey to avoid the possibility that upon conviction he might be sentenced to the maximum thirty years' imprisonment. Instead, Posey avoided the possibility that upon conviction he would be sentenced to no less than twenty-five years' imprisonment. Stegall avoided the same twenty-five year mandatory minimum sentence, and received a fifteen year sentence, for both trafficking and distributing methamphetamine, in exchange for his cooperation. The jury heard testimony that Hall avoided the maximum thirty year sentence associated with the two trafficking counts alleged in the Indictment. However, due to the trial court's limitation, the jury did not hear that Hall actually received ten years' imprisonment instead of the mandatory minimum. Defense counsel could not present to the jury that both Anderson and Taylor avoided the mandatory minimum twenty-five years' imprisonment by pleading guilty to lesser offenses. Craft received a ten year sentence and Holloway received a twelve year sentence in exchange for their testimony. However, although defense counsel presented to the jury that both witnesses avoided the maximum sentence for their respective charges, counsel could not show that they actually faced a twenty-five year mandatory minimum. The sentences received by many of these witnesses are not only far lower than the maximum sentence, within a judge's discretion, but are far lower than the mandatory minimum, in which a judge has no discretion. The trial court's instruction improperly prevented Appellant from demonstrating the possible bias rising from these plea deals through an examination reaching the requisite degree of granularity.

■ To the extent our directive in *Brown* was unclear, the instant case provides an opportunity to clarify. The fact that a cooperating witness avoided a *mandatory minimum* sen-

tence is critical information that a defendant must be allowed to present to the jury.[4]

## B. Harmless Error

■■ A violation of the Confrontation Clause is not per se reversible but is subject to a harmless error analysis. *Van Arsdall,* 475 U.S. 673, 680, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986).

> Whether such an error is harmless in a particular case depends upon a host of factors.... The factors include the *importance of the witness's testimony* in the prosecution's case, whether the testimony was *cumulative,* the presence or absence of evidence *corroborating* or contradicting the testimony of the witness on material points, the *extent of cross examination* otherwise permitted, and, of course, the *overall strength* of the prosecution's case.

*Id.* at 684, 106 S.Ct. 1431 (emphasis added). *See State v. Graham,* 314 S.C. 383, 385, 444 S.E.2d 525, 527 (1994) ("The list of factors as set out in *Van Arsdall* is not exhaustive."). Given the State's heavy reliance on circumstantial evidence, and the abysmal credibility of the State's witnesses, the error in this case was not harmless.

In *State v. Mizzell,* 349 S.C. 326, 563 S.E.2d 315 (2002), this Court applied the *Van Arsdall* factors. In that case, Jamie and Jimmie Mizell (the defendants) were convicted of second degree burglary and grand larceny. *Id.* at 329, 563 S.E.2d at 316. The State's key witness, Donald Steele, testified that he accompanied the defendants to the site of the crime and

---

4. It is important to note that when defense counsel asked Posey whether trafficking four hundred grams or more of methamphetamine carried a minimum of twenty-five years' and up to thirty years' imprisonment he answered "true." It is of no moment that at some point during the proceedings one of the witnesses confirmed the existence of a mandatory minimum sentence. The fact remains that Appellant was unable to fully develop this information through the cross-examination of Posey, and was expressly forbidden from doing so with regard to the State's remaining witnesses. Moreover, the trial court limited Appellant's cross-examination based on reasoning this Court has explicitly declined to adopt. *See Brown,* 303 S.C. at 171–72, 399 S.E.2d at 594 ("We reject the State's argument that inquiry into the punishment was properly excluded because it would have allowed the jury to learn of [defendant]'s own potential sentence if convicted.").

explained how defendants entered the home, and what was taken. *Id.* at 330, 563 S.E.2d at 317. On cross-examination, Steele admitted that the State charged him with the same crimes as the defendants, but the trial court excluded evidence of the possible sentence he faced. *Id.* Steele admitted that if he had not cooperated with the State he would have faced "a long sentence." *Id.* However, Steele would have actually faced a maximum of life in prison had he been convicted of the charges he originally faced. *Id.* at 334–35, 563 S.E.2d at 319.

This Court noted that the State presented testimony from the victim and the police that supported Steele's testimony. As a result, much of the disputed testimony was cumulative or corroborated by other witnesses. *Id.* at 334, 563 S.E.2d at 319. The State did not present any physical evidence tying the defendants to the scene of the crime. *Id.* Therefore, Steele's eyewitness testimony was the only evidence linking the defendants to the crime, but the trial court allowed only a limited examination of Steele's possible bias. *Id.* at 334, 563 S.E.2d at 319. However, if the jury found Steele unbelievable, there would be no other evidence before them tying the defendant's to the scene of the crime. Thus, the trial court's error was not harmless beyond a reasonable doubt. *Id.* at 335, 563 S.E.2d at 320.

In the instant case, the State presented cumulative testimony regarding Appellant's involvement in trafficking four hundred or more grams of methamphetamine. However, the testimony presented only corroborated other testimony, and the State chose not to present any physical evidence tying Appellant to the activities charged. This strategic decision enhanced the importance of that testimony, and the necessity that Appellant be permitted to demonstrate any bias on the part of the State's witnesses. The strength of the State's case relied on credibility determinations uniformly applicable to the witnesses presented. Thus, if the jury found the mandatory minimum issue affected one witness's credibility, that determination could have likely affected the believability as to all of the State's witnesses facing the same mandatory minimum sentence. Moreover, there was no other evidence to link Appellant to the indicted offense.

Finally, the background of the witnesses in this case should have cautioned the trial court against limiting Appellant's cross examination. As we observed in *State v. Davis*, 371 S.C. 170, 638 S.E.2d 57 (2006):

> Moreover, there are significant credibility problems with the fact witnesses. . . . All were involved with crack cocaine on the night in question and did not initially give informative statements to the authorities. Often, cooperation with police on this investigation came only after several witnesses had been jailed on other charges and were facing prison time themselves.

*Id.* at 182, 638 S.E.2d at 63–64. Analogously, all of the witnesses in the present case had significant involvement with illegal drugs and other criminal activities, and cooperated following arrest and the possibility of long prison terms. In a case built on circumstantial evidence, including testimony from witnesses with such suspect credibility, a ruling preventing a full picture of the possible bias of those witnesses cannot be harmless. Based on the Record before this Court, it is impossible to conclude that the trial court's error did not contribute to the verdict beyond a reasonable doubt. *State v. Clark*, 315 S.C. 478, 484, 445 S.E.2d 633, 636 (1994) ("The reviewing court must review the entire record to determine what effect the error had on the verdict.") (Toal, J. dissenting). Thus, reversal is required.[5]

**REVERSED AND REMANDED.**

BEATTY, KITTREDGE and HEARN, JJ., concur. PLEICONES, J., concurring in result only.

---

5. As to Appellant's contention that the trial court erred in denying his motion for a directed verdict, we disagree. We affirm the trial court's decision on this issue pursuant to Rule 220(b)(1), SCACR, and the following authority: *State v. Weston*, 367 S.C. 279, 292–93, 625 S.E.2d 641, 648 (2006) (providing that a trial court examines a request for a directed verdict based on the existence or nonexistence of evidence, and that if there is any direct or substantial circumstantial evidence reasonably tending to prove the defendant's guilt, the case must be submitted to the jury).