756 S.E.2d 393

**The STATE, Respondent,**

v.

**Tyrone WHATLEY, Appellant.**

**Appellate Case No. 2011–185486.**
**No. 5209.**

Court of Appeals of South Carolina.

Heard Nov. 15, 2013.
Decided March 19, 2014.
Rehearing Denied April 25, 2014.

Appellate Defender Susan Barber Hackett, of Columbia, for Appellant.

Attorney General Alan McCrory Wilson, Chief Deputy Attorney General John W. McIntosh, Senior Assistant Deputy Attorney General Salley W. Elliott, and Assistant Attorney General Jennifer Ellis Roberts, all of Columbia; and Solicitor Edgar Lewis Clements, III, of Florence, for Respondent.

CURETON, A.J.

Following convictions for first-degree burglary, two counts of armed robbery, and conspiracy, Tyrone Whatley was sentenced to life imprisonment without the possibility of parole (LWOP). He appeals, arguing the trial court erred in improperly limiting the scope of his cross-examination of a witness concerning the mandatory minimum sentences she avoided by testifying against him. We affirm.

## FACTS

After two motel patrons in Florence were robbed at gunpoint in July 2009, Whatley was indicted for first-degree burglary, two counts of armed robbery, and conspiracy. Police also arrested John Barfield and Jessica Ussery. Whatley was tried in February 2011.

At trial, the State presented testimony from the victims, Brandon Cross and Ciera Davis, who stated that on July 21,

2009, the couple was robbed and their motel room was burglarized by two men and a woman. One man was white and carried a shotgun; the other man was black and did not appear armed.

Moments after Cross and Davis escaped and called 911, police officers pulled over a car matching the descriptions given by Cross and Davis. Two men ran from the passenger side of the car and escaped. Officers discovered Davis's bags in the back seat and a shotgun in the trunk, and arrested the driver, Ussery.

Ussery testified her boyfriend, Barfield, had threatened her if she told police about him. She admitted that, during her arrest, she had lied to police, claiming two men with a gun had approached her in the parking lot and forced her to participate in the robbery. However, Ussery stated after she spent some time in jail and realized she was safe from retribution, she modified her story. Ultimately, Ussery explained she had driven Barfield to pick up an acquaintance she knew as "Rom" or "Jamal Bryant" and then to the motel.

Using information gained from Ussery, the police arrested Barfield about a week after the robbery. After approximately seven months in jail, Barfield, in turn, provided them with sufficient information to locate and arrest Whatley, who used the nickname Rom. While in jail, Barfield identified Whatley as Rom in a photographic lineup. At trial, both Ussery and Barfield testified Whatley was the man they knew as Rom, who had participated in the robbery.

Ussery admitted she was initially charged with two counts of armed robbery with a deadly weapon, failure to stop for a blue light, and falsification of information to the police. However, she stated after Barfield's and Whatley's arrests, the armed robbery charges against her were reduced to accessory before and after the fact of armed robbery. Those charges were pending at the time of Whatley's trial. Barfield testified he was initially charged with first-degree burglary, two counts of armed robbery, conspiracy, and possession of a weapon, but pled guilty to two counts of attempted armed robbery. By the time of Whatley's trial, the other charges against Barfield had been dismissed, and he had received sentences totaling seven years' imprisonment.

During Whatley's cross-examinations of Ussery and Barfield, the trial court sustained the State's objections to questions about the potential sentences they faced. Specifically, after Whatley elicited from Ussery that accessory charges were pending against her, the following exchange between Whatley and Ussery occurred:

Q. ... You know what your exposure is on those charges?

A. What is what?

Q. What you could get?

A. No, sir.

Q. What kind of time you could get?

[The trial court sustained the State's objection "to any amount of time that she may be able to catch on those charges."]

Q. Okay. You were charged with armed robbery; is that correct?

A. Yes, sir.

Q. All right. Now, are you aware of what kind of time you were looking at on arm[ed] robbery?

A. No, sir, not of the full extent, no sir.... I just know it carries a long sentence.

Q. Okay. So nobody's ever told you what arm[ed] robbery carries?

A. I'm not aware of or how long the year term is.

Ussery explained she did not know when the charges against her were reduced, but she knew the reduction occurred sometime after Barfield and Whatley were arrested. Ussery denied having made a plea deal in exchange for her testimony.

Subsequently, Whatley established Barfield had received a seven-year sentence after pleading guilty to reduced charges and asked him:

Q. So your arm[ed] robbery charges were both dismissed?

A. Yes.

Q. Is that correct? .

A. Yes.

Q. Did you know what you were facing for arm[ed] robbery?

[The trial court sustained the State's objection concerning "any amount of time that the [witness] was subjected to."]

Q. Mr. Barfield, let me ask you this, were you aware that you could receive substantially more time than you got for—

A. Yes.

Q. —for attempted arm[ed] robbery?

A. Yes.

Q. And your burglary first charge[,] are you aware you could receive substantially more time for that as well?

A. Yes.

The following day, after further consideration, the trial court reversed its ruling on the State's objection and offered Whatley the opportunity to fully question Barfield.[1] The trial court reasoned the answer "could possibly go to the bias or prejudice of this witness." Whatley then cross-examined Barfield concerning his knowledge that the sentence for armed robbery ranged from ten to thirty years and the sentence for burglary ranged from fifteen years to life. However, neither the parties nor the trial court raised the possibility of reexamining Ussery.

After deliberations, the jury convicted Whatley of all charges. Due to a prior conviction for armed robbery, the trial court imposed LWOP sentences on Whatley for first-degree burglary and each of the armed-robbery convictions. He received a concurrent sentence of five years' imprisonment for conspiracy. This appeal followed.

## STANDARD OF REVIEW

As a general rule, a trial court's ruling on the proper scope of cross-examination will not be disturbed on appeal absent a manifest abuse of discretion. *State v. Quattlebaum*, 338 S.C. 441, 450, 527 S.E.2d 105, 109 (2000).

---

1. The trial court indicated it reversed its ruling after reviewing *State v. Gillian*, 360 S.C. 433, 454, 602 S.E.2d 62, 73 (Ct.App.2004), *aff'd as modified*, 373 S.C. 601, 646 S.E.2d 872 (2007).

## LAW/ANALYSIS

Whatley asserts the trial court erred in improperly limiting the scope of his cross-examination of Ussery regarding the mandatory minimum sentences she avoided by testifying against him. We agree but find the error was non-prejudicial.

A person who commits robbery while armed with a firearm or other deadly weapon "is guilty of a felony and, upon conviction, must be imprisoned for a mandatory minimum term of not less than ten years or more than thirty years." S.C.Code Ann. § 16–11–330(A) (2003). "A person who aids in the commission of a felony or is an accessory before the fact in the commission of a felony ... is guilty of a felony and, upon conviction, must be punished in the manner prescribed for the punishment of the principal felon." S.C.Code Ann. § 16–1–40 (2003). The punishment for a person who commits the offense of accessory after the fact has no mandatory minimum. S.C.Code Ann. §§ 16–1–20, –55 (2003).

"The right to a meaningful cross-examination of an adverse witness is included in the defendant's Sixth Amendment right to confront his accusers." *State v. Aleksey,* 343 S.C. 20, 33, 538 S.E.2d 248, 255 (2000); *see* U.S. Const. amend. VI (stating "[i]n all criminal prosecutions, the accused shall enjoy the right to ... be confronted with the witnesses against him"). "This does not mean, however, that trial courts conducting criminal trials lose their usual discretion to limit the scope of cross-examination." *Aleksey,* 343 S.C. at 33–34, 538 S.E.2d at 255. "On the contrary, 'trial [courts] retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, witness' safety, or interrogation that is repetitive or only marginally relevant.'" *Id.* at 34, 538 S.E.2d at 255 (quoting *Delaware v. Van Arsdall,* 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986)). "The limitation of cross-examination is reversible error if the defendant establishes he was unfairly prejudiced." *State v. Brown,* 303 S.C. 169, 171, 399 S.E.2d 593, 594 (1991).

A criminal defendant may show a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to

show a prototypical form of bias on the part of the witness, and thereby to expose to the jury the facts from which jurors ... could appropriately draw inferences relating to the reliability of the witness.

*State v. Mizzell,* 349 S.C. 326, 331, 563 S.E.2d 315, 317 (2002) (quoting *Van Arsdall,* 475 U.S. at 680, 106 S.Ct. 1431) (internal quotation marks omitted). The *Mizzell* court highlighted the competing concerns with regard to certain witnesses:

The jury is, generally, not entitled to learn the possible sentence of a defendant because the sentence is irrelevant to finding guilt or innocence. However, other constitutional concerns, such as the Confrontation Clause, limit the applicability of this rule in circumstances where the defendant's right to effectively cross-examine a co-conspirator witness of possible bias outweighs the need to exclude the evidence.

*Id.* at 331–32, 563 S.E.2d at 318.

▮▮▮▮ Recently, our supreme court revisited limitations on the scope of cross-examination in light of the Confrontation Clause and concluded: "The fact that a cooperating witness avoided a *mandatory minimum* sentence is critical information that a defendant must be allowed to present to the jury." *State v. Gracely,* 399 S.C. 363, 374–75, 731 S.E.2d 880, 886 (2012). "It is of no moment that at some point during the proceedings one of the witnesses confirmed the existence of a mandatory minimum sentence. The fact remains that Appellant was unable to fully develop this information through the cross-examination...." *Id.* at 375 n. 4, 731 S.E.2d at 886 n. 4. "In a case built on circumstantial evidence, including testimony from witnesses with such suspect credibility, a ruling preventing a full picture of the possible bias of those witnesses cannot be harmless." *Id.* at 377, 731 S.E.2d at 887.

▮▮▮▮ However, the *Gracely* court acknowledged "[a] violation of the Confrontation Clause is not per se reversible but is subject to a harmless error analysis." *Id.* at 375, 731 S.E.2d at 886.

Whether such an error is harmless in a particular case depends upon a host of factors.... The factors include [1] the *importance of the witness's testimony* in the prosecution's case, [2] whether the testimony was *cumulative,* [3] the presence or absence of evidence *corroborating* or con-

tradicting the testimony of the witness on material points, [4] the *extent of cross[-]examination* otherwise permitted, and, of course, [5] the *overall strength* of the prosecution's case.

*Id.* (quoting *Van Arsdall,* 475 U.S. at 684, 106 S.Ct. 1431 (emphasis added in *Gracely* )).

 *Gracely* requires the trial court to allow an accused to develop evidence that (1) a cooperating witness, (2) avoided, (3) a mandatory minimum sentence. 399 S.C. at 374–75, 731 S.E.2d at 886. Although Ussery provided eyewitness testimony, she was also implicated in the crime and, after her arrest, faced two different sets of charges. After her arrest, she was charged with two counts of armed robbery, each of which carried a mandatory minimum sentence of ten years. *See* § 16–11–330(A). After Barfield's and Whatley's arrests, Ussery's charges were reduced to accessory before and after the fact. For the charge of accessory to an armed robbery before the fact, Ussery still faced a mandatory minimum sentence of ten years. *See id.;* § 16–1–40. However, a charge of accessory after the fact does not carry a mandatory minimum sentence. *See* §§ 16–1–20, –55 (establishing maximum sentences but no minimum sentences for persons convicted of accessory after the fact). During Whatley's cross-examination of Ussery, the trial court excluded questions concerning the sentences Ussery faced for the reduced charges. Because at least one of the charges against Ussery was reduced from an offense with a mandatory minimum sentence to an offense without such a sentence, the trial court erred in precluding Whatley from questioning her on the sentences she faced for the reduced charges.

 Nevertheless, we find Whatley suffered no prejudice. The limitation the trial court imposed upon Whatley's cross-examination of Ussery, though improper, did not "prevent[ ] a full picture of [her] possible bias." *See Gracely,* 399 S.C. at 377, 731 S.E.2d at 887. Analyzing the evidence in this case in view of the first three *Van Arsdall* factors, the importance of a witness's testimony to the prosecution's case and whether it was cumulative to or corroborated by other evidence, we find Whatley suffered no prejudice. *See id.* at 375, 731 S.E.2d at 886. The State presented the testimony of six witnesses,

including the two victims and the law enforcement officers who pursued the robbers. Of those six witnesses, only Ussery and Barfield identified Whatley as one of the robbers. However, Barfield's testimony established the same material facts as Ussery's, and more. Moreover, Ussery's testimony did not contradict Barfield's on any essential point. Both Barfield and Ussery recalled picking up Whatley and driving to the motel. Both testified Whatley supplied the gun, Barfield carried it, and Barfield and Whatley left Ussery to fend for herself after she pulled over for the police. In addition, both witnesses described Barfield's, Whatley's, and Ussery's respective roles in the robbery up to the time the men entered the motel room. Without Ussery's testimony, the State presented evidence of all those events through Barfield. Furthermore, Barfield corroborated the victims' testimony concerning events in the motel room that Ussery had not witnessed. Thus, although Ussery's testimony was important to the State's case against Whatley, it was cumulative to, and corroborated by, Barfield's testimony.

The evidence relevant to the fourth *Van Arsdall* factor, the extent of cross-examination allowed, also does not support a finding of prejudice. Aside from sustaining the State's objection to Whatley's question concerning the sentences Ussery faced for her accessory charges, the trial court did not restrict Whatley's cross-examination of Ussery in any way.

With regard to the final factor, the overall strength of the State's case, Whatley correctly observes the State presented no physical evidence tying him to the robbery, and several months elapsed between the robbery and Whatley's arrest. Additionally, neither the victims nor the officer who responded to the robbery could identify him. In fact, the only evidence identifying Whatley as one of the robbers came from Barfield and Ussery.

Notwithstanding, Whatley suffered no prejudice from the improper limitation of his cross-examination of Ussery. He availed himself of extensive opportunities to delve into Ussery's bias and poor credibility, capitalizing on her inconsistent statements to the police. Furthermore, although Ussery avoided a mandatory minimum sentence of ten years for armed robbery by agreeing to testify against Whatley, she

still faced the same mandatory minimum sentence for the reduced charge of accessory before the fact. In view of this evidence, we find the trial court's error in restricting the scope of Whatley's cross-examination of Ussery did not result in prejudice to Whatley.

## CONCLUSION

We find the trial court erred in preventing Whatley from cross-examining Ussery concerning the mandatory minimum sentence she faced for the reduced charges pending against her at the time of Whatley's trial. However, under the facts present in this case, we find Whatley had ample opportunity to demonstrate Ussery's bias and, therefore, suffered no prejudice. Accordingly, the decision of the trial court is

**AFFIRMED.**

FEW, C.J., concurs.

PIEPER, J., concurs in result only.