# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

The State, Respondent,

v.

Jaycoby Terreak Williams, Appellant.

Appellate Case No. 2017-000872

---

Appeal From Allendale County
Perry M. Buckner, III, Circuit Court Judge

---

Opinion No. 5791
Heard December 12, 2019 – Filed January 13, 2021

---

**AFFIRMED**

---

Appellate Defender David Alexander, of Columbia, for
Appellant.

Attorney General Alan McCrory Wilson, Chief Deputy
Attorney General W. Jeffrey Young, Deputy Attorney
General Donald J. Zelenka, Senior Assistant Deputy
Attorney General Melody Jane Brown, Assistant
Attorney General Samuel Marion Bailey, Assistant
Attorney General William Joseph Maye, and Assistant
Attorney General Michael Douglas Ross, all of
Columbia; and Solicitor Isaac McDuffie Stone, III, of
Bluffton; all for Respondent.

---

**MCDONALD, J.:** Jaycoby Terreak Williams appeals his murder conviction,
arguing the circuit court erred in refusing to allow him to cross-examine one of the

State's key witnesses about the potential sentences the witness faced on his pending charges for drug possession and armed robbery.  We affirm, as the circuit court's error in denying this line of questioning was harmless in this case.

**Facts and Procedural History**

In the early evening of May 26, 2015, James Spellman (Victim) was shot outside his Allendale apartment; he later died at the hospital.  Williams was subsequently arrested, indicted, and tried for Victim's murder.

Several witnesses from Victim's apartment complex testified at trial.  Just before the shooting, Victim's neighbor, Franklin Williams (Franklin), was taking out his trash when he saw people he did not recognize in the apartment complex breezeway.  Shortly thereafter, while on the phone with his uncle, Franklin heard a gunshot and looked out the window to see a "blue car pull off."  He further described the car as "small."  Franklin could not identify who was in the car, he "just saw the blue car."

Debentris Breeland, another of Victim's neighbors, spoke with South Carolina Law Enforcement Division (SLED) Agent Richard Johnson after the shooting.  Although Breeland initially denied telling Agent Johnson that Victim was afraid of Williams, he reluctantly admitted "I was saying he was scared of him.  I knew he didn't want no problems or nothing with him."[1]  Breeland denied seeing the blue car but testified he heard one gunshot while inside his apartment.

Tiffany Loadholt lived with Victim at the time of the shooting.  She testified they had been dating on and off for three years.  Williams is the father of Loadholt's two children, who were four and eight at the time of trial.

Victim's cousin, Dequincy Best, was with the victim in an outdoor stairwell at the time of the shooting.  While Best and Victim were talking, a blue Ford Focus drove up to the complex; Williams and Rehem Devoe exited the vehicle.  Devoe shook Best's hand, spoke to Victim, and continued up the stairs.  Williams followed Devoe up the stairs and also shook Best's hand.  Best testified that when Williams shook his hand he saw "a pistol tucked on the side of his shoulder, on the side of his pants."  He identified the weapon as an automatic, "probably a .40 Glock."  As

---

[1] Later in the trial, Fourteenth Circuit Solicitor's Office Investigator Donnie Hutto confirmed that Breeland said the victim "told him he was scared" of Williams.

Best walked up the stairs, Williams turned to come down. Best then heard a gunshot, turned, and saw Williams pointing the gun at Victim. Best yelled—and he heard Devoe yell—"Stop, don't shoot my cousin" because "Williams was over him with the gun, getting ready to shoot him again." Williams then fled, and Best did not know where he went. When asked to identify the man who shot his cousin, Best identified the defendant, Williams.

Devoe, who was riding with Williams on the day of the shooting, also testified. Prior to this testimony, the circuit court held a bench conference to consider whether Williams could cross-examine Devoe about his pending armed robbery and drug possession charges. The circuit court ruled that under Rule 608, SCRE, Williams could cross-examine Devoe about pending charges, but not any potential penalty because "the penalty was a matter for the court."[2]

On direct examination, Devoe testified that he saw Williams on a regular basis and had known Williams for "[b]asically, all [his] life." Devoe was at his uncle's house when Williams and two other men picked him up in a blue car he identified as a Ford Escort. The group rode around for a while and eventually ended up at the apartment complex. Many people were outside the complex, including Devoe's cousins, Breeland and Victim. Devoe claimed he did not see Williams exit the vehicle, but heard the car door shut behind him. He heard the gunshot as soon as he reached the top of the outdoor stairs. Devoe ducked, turned, and saw Williams standing over Victim, who was on the ground. Williams was holding a handgun, which Devoe described as an automatic. He identified Williams as the man he saw standing over his cousin with a gun.

The solicitor then asked Devoe whether he had "any current pending charges." During his direct examination, Devoe acknowledged his pending "sale undercover" and robbery charges. On cross-examination, when asked about the substance he was charged with selling, Devoe responded, "Marijuana, methamphetamine, whatever it is. I don't know." When asked about the pending armed robbery charge, Devoe admitted both charges were from Allendale County, would be

---

[2] "Bias, prejudice or any motive to misrepresent may be shown to impeach the witness either by examination of the witness or by evidence otherwise adduced." Rule 608(c), SCRE. The circuit court further noted Devoe had "been convicted of failing to stop for a blue light" and "under Rule 609, [SCRE,] " it would permit Williams's counsel to use this to attempt to "attack the witness's credibility or believability."

prosecuted by the same Solicitor's office, and were investigated by the same police department. On redirect, Devoe testified the State did not promise anything or tell him his charges would be dropped in exchange for his assistance in the case against Williams.

Williams's cousin, Dwain Dean, testified he gave Williams a ride to Columbia on the night of the shooting. On cross-examination, Dean denied making a prior statement to police that "[Williams] wanted a ride back to Allendale to turn himself in because he said he didn't do it."

Detective Qutique R. Manor of the Allendale Police Department (APD) testified that when he interviewed Williams following his arrest, Williams claimed he was in Columbia at the time of the shooting. On cross-examination, Manor confirmed Williams turned himself in to law enforcement.

SLED assisted the APD with the investigation of the shooting. At trial, Agent Johnson did not recall "any items of evidentiary value being collected" from the scene, and the gun was never recovered. No shell casings were found at the scene. Agent Dawn Claycomb of SLED's Crime Scene Unit responded to the secured scene, where she marked items of interest, took photographs, and collected evidence. Her work including marking any areas of interest the investigators could swab or dust. She also attended the victim's autopsy at Newberry County Memorial Hospital, where she received sealed evidence from the forensic pathologist.

Agent James William Green, a SLED forensic firearms examiner, received and analyzed the fired bullet and bullet jacket fragment that Agent Claycomb collected from victim's autopsy. He determined the bullet "was most consistent with being a bullet loaded into some .40 S&W caliber cartridges or some 10 millimeter auto caliber cartridges." Based on his analysis and information from the database the FBI provides to SLED, Agent Green determined the bullet was likely fired from a semi-automatic pistol manufactured by Smith and Wesson. On cross-examination, Agent Green noted that while the database provided a number of firearms models meeting the specifications of the bullet, a "Smith & Wesson in a .40" would be the easiest way to describe the firearm sought in connection with this shooting. The jacket fragment provided no useful information.

Dr. Janet Ross, the forensic pathologist who performed the victim's autopsy, was the State's final witness. The jury unanimously found Williams guilty of murder, and the circuit court sentenced him to thirty-five years' imprisonment.

**Standard of Review**

In criminal cases, this court only reviews errors of law. *State v. Baccus*, 367 S.C. 41, 48, 625 S.E.2d 216, 220 (2006). "As a general rule, a trial court's ruling on the proper scope of cross-examination will not be disturbed absent a manifest abuse of discretion." *State v. Quattlebaum*, 338 S.C. 441, 450, 527 S.E.2d 105, 109 (2000). "An abuse of discretion occurs when the conclusions of the trial court either lack evidentiary support or are controlled by an error of law." *State v. Douglas*, 369 S.C. 424, 429–30, 632 S.E.2d 845, 848 (2006). Additionally, the circuit court's decision will not be reversed on appeal absent a showing of prejudice. *State v. Colf*, 337 S.C. 622, 625, 525 S.E.2d 246, 247–48 (2000). "The right to a meaningful cross-examination of an adverse witness is included in the defendant's Sixth Amendment right to confront his accusers." *State v. Aleksey*, 343 S.C. 20, 33, 538 S.E.2d 248, 255 (2000). "This does not mean, however, that trial courts conducting criminal trials lose their usual discretion to limit the scope of cross-examination." *Id.* at 33–34, 538 S.E.2d at 255. "On the contrary, 'trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, witness' safety, or interrogation that is repetitive or only marginally relevant.'" *Id.* at 34, 538 S.E.2d at 255 (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)).

**Law and Analysis**

Williams argues the circuit court erred in preventing him from cross-examining Devoe regarding the potential sentence he faced on the pending armed robbery charge because the possibility of a serious penalty was proper impeachment evidence relevant to Devoe's bias and motive to testify against him. Williams asserts the circuit court's error could not be harmless because the State presented no forensic evidence connecting him to the murder, the State's other witnesses either did not witness the crime or were not credible, Devoe and Best are both related to Victim, and there were multiple unidentified individuals at the scene of the shooting. We disagree.

"The Confrontation Clause provides 'in all criminal prosecutions, the accused shall enjoy the right to . . . be confronted with the witnesses against him . . . .'" *State v. Gracely*, 399 S.C. 363, 372, 731 S.E.2d 880, 885 (2012) (alteration in original) (quoting U.S. Const. amend. VI). "The Confrontation Clause guarantees a defendant the opportunity to cross-examine a witness concerning bias." *Id.* "A

defendant demonstrates a Confrontation Clause violation when he is prohibited from 'engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias . . . from which jurors . . . could draw inferences relating to the reliability of the witness.'" *State v. Clark*, 315 S.C. 478, 481, 445 S.E.2d 633, 634 (1994) (alterations in original) (quoting *Van Arsdall*, 475 at 680).

In *Gracely*, a State Grand Jury investigation of the sale of methamphetamine in Pickens County resulted in an indictment alleging fifty-two separate crimes against various individuals. 299 S.C. at 366, 731 S.E.2d at 881. To establish its case against Gracely, the State relied on the testimony of seven individuals also named in the indictment. *Id.* at 366, 731 S.E.2d at 881–82. Gracely "sought to show the potential bias of each witness by presenting to the jury information regarding the significantly lighter sentences th[o]se witnesses received in exchange for their testimony." *Id.* at 366–67, 731 S.E.2d at 882. However, following the State's objection, the circuit court limited the cross-examination and "instructed defense counsel that the State's witnesses could be questioned about the maximum punishment, but not the mandatory minimum punishment, for those charges they had in common with Appellant." *Id.* at 367, 731 S.E.2d at 882.

Our supreme court reversed, explaining the circuit court "allowed defense counsel to cross-examine the witnesses regarding possible bias, but improperly prevented questioning which would have examined the extent of that bias and the witnesses' possible motivations for testifying against Appellant." *Id.* at 373–74, 731 S.E.2d at 885. The supreme court held, "[t]he fact that a cooperating witness avoided a *mandatory minimum* sentence is critical information that a defendant must be allowed to present to the jury." *Id*. at 374–75, 731 S.E.2d at 886. Additionally, the court applied the five factor test set forth in *Van Arsdall*, to determine whether the violation of the Confrontation Clause constituted harmless error:

> The factors include [1] the importance of the witness's testimony in the prosecution's case, [2] whether the testimony was cumulative, [3] the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, [ 4] the extent of cross examination otherwise permitted, and, of course, [5] the overall strength of the prosecution's case.

*Id.* at 375, 731 S.E.2d at 886 (quoting *Van Arsdall,* 475 U.S. at 684); *see also State v. Graham,* 314 S.C. 383, 386, 444 S.E.2d 525, 527 (1994) (explaining the list of

factors set out in *Van Arsdall* is not exhaustive).  Ultimately, the *Gracely* court found:

> [A]ll of the witnesses in the present case had significant involvement with illegal drugs and other criminal activities, and cooperated following arrest and the possibility of long prison terms.  In a case built on circumstantial evidence, including testimony from witnesses with such suspect credibility, a ruling preventing a full picture of the possible bias of those witnesses cannot be harmless.

399 S.C. at 377, 731 S.E.2d at 887.

Here, the circuit court erred in limiting Williams's cross-examination of Devoe because Devoe's potential sentencing exposure on his pending charges impacted his potential bias and motive for testifying.  *See e.g.*, *State v. Pradubsri*, 403 S.C. 270, 280, 743 S.E.2d 98, 103–04 (Ct. App. 2013) (finding the circuit court's refusal to allow Pradubsri to question Martin on the exact potential sentence she faced on each charge was error; the evidence was critical to showing Martin's potential bias, and "Martin's potential legal exposure was relevant to her bias and potential motive in testifying."); *State v. Mizzell,* 349 S.C. 326, 331–32, 563 S.E.2d 315, 318 (2002) ("The jury is, generally, not entitled to learn the possible sentence of a defendant because the sentence is irrelevant to finding guilt or innocence.  However, other constitutional concerns, such as the Confrontation Clause, limit the applicability of this rule in circumstances where the defendant's right to effectively cross-examine a co-conspirator witness of possible bias outweighs the need to exclude the evidence.").

However, we find any error in limiting this cross-examination was harmless. Devoe was one of two witnesses who positively identified Williams as the shooter, and the circuit court did not otherwise limit his cross-examination.  The State presented independent testimony reflecting the strained relationship between Williams and the victim, placing Williams at the crime scene, and identifying Williams as the shooter.  Although Devoe's eyewitness testimony was significant, it mirrored that of DeQuincy Best, who testified he saw Williams standing over the fallen victim, pointing his gun at him before fleeing the scene.  Moreover, even with the limitation placed on his cross-examination, Williams's counsel was able to muddy Devoe's credibility.  Devoe falsely claimed he was charged with selling marijuana—as opposed to methamphetamine—to an undercover officer; this is

hardly an insignificant distinction, and defense counsel seized upon it. Further, Devoe acknowledged both the drug charge and the armed robbery charge were still pending in Allendale County, the same solicitor's office was prosecuting him, and the same law enforcement agency investigating his charges was involved in the investigation of Williams. Thus, we find Williams was able to effectively adduce evidence of Devoe's "[b]ias, prejudice or . . . motive to misrepresent" for impeachment purposes despite the circuit court's exclusion of the sentencing line of inquiry. *See* Rule 608(c); *see, e.g.*, *State v. Whatley*, 407 S.C. 460, 469–471, 756 S.E.2d 393, 397–98 (Ct. App. 2014) (trial court's error in preventing cross-examination of witness Ussery as to mandatory minimum sentence she faced for reduced charges pending at time of trial was deemed harmless where the defendant had ample opportunity to otherwise demonstrate Ussery's bias, testimony of another witness established same material facts Ussery recounted, and Ussery's testimony did not contradict that of the other witness on any essential point).

Accordingly, after considering the *Van Arsdall* factors in this instance, we find the circuit court's limitation of Williams's cross-examination of Devoe was harmless, and Williams suffered no prejudice. *See e.g.*, *State v. Young*, 420 S.C. 608, 628, 803 S.E.2d 888, 899 (Ct. App. 2017) ("[T]he harmless-error doctrine recognizes the principle that the central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence, and promotes public respect for the criminal process by focusing on the underlying fairness of the trial rather than on the virtually inevitable presence of immaterial error." (quoting *Van Arsdall*, 475 U.S. at 681)).

**Conclusion**

Based on the foregoing, Williams's conviction is

**AFFIRMED.**

**HUFF and WILLIAMS, JJ., concur.**